THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-218-FL

CHRISTOPHER JOY,                          )
                                          )
                    Plaintiff,            )
                                          )        **MEMORANDUM AND**
v.                                        )        **RECOMMENDATION**
                                          )
MERSCORP, INC.; THE BANK OF NEW           )
YORK-MELLON; LITTON LOAN                  )
SERVICING, LP; PROMMIS SOLUTIONS,         )
LLC, a Georgia Corporation; JOHNSON &     )
FREEDMAN, LLC, a Georgia Corporation;     )
NATIONWIDE TRUSTEE SERVICES, INC, a       )
Tennessee corporation; MONICA WALKER,     )
individually; CHRIS MEYER, individually;  )
MATRESSA MORRIS, individually;            )
MICHELE YOUNG, individually; JANUARY      )
N. TAYLOR, individually; DOES 1-10,       )
inclusive,                                )
                                          )
                    Defendants.           )

This matter is before the court on the following motions regarding Plaintiff's second amended

complaint [DE-141]:

> (1)    Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) by
>        Defendant Litton Loan Servicing, LP ("Litton")[DE-144];
>
> (2)    Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) by
>        Defendant MERSCORP, Inc. ("MERS")[1] [DE-166];

---

[1]      Merscorp, Inc. is a holding company which owns and operates the subsidiary Mortgage
Electronic Registration Systems, Inc. *See In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No.
09-2119-JAT, 2011 U.S. Dist. LEXIS 117107, at *36, 2011 WL 4550189, at *3 (D. Ariz. Oct. 3,
2011) (explaining MERS is a wholly owned subsidiary of MERSCORP, a Virginia corporation).
For the sake of simplicity, the court refers to Merscorp, Inc. as MERS.

(3)      Motion to Dismiss without prejudice pursuant to Fed. R. Civ. P. 12(b)(5)[2] for Failure to Serve Complaint by The Bank of New York Mellon ("BNY") [DE-170]; and

(4)      Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) by Defendants Johnson & Freedman, LLC ("J&F") and January N. Taylor ("Taylor") (collectively "the J&F Defendants") [DE-175].

The pending motions are ripe for adjudication. The parties have not consented to the jurisdiction of the magistrate judge; therefore, the motions are considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, this court recommends ALLOWING the motions to dismiss by Litton, MERS, BNY and the J&F Defendants.

## I. PROCEDURAL HISTORY

Plaintiff filed his complaint [DE-4] on 28 May 2010. The complaint named a number of defendants, including Countrywide Financial Corporation, Countrywide Home Loans ("Countrywide"), Decision One Mortgage Company, LLC ("Decision One" or "lender"), Nationwide Trustee Services, Inc. ("Nationwide"), Monica Walker ("Walker"), Anne Lancaster ("Lancaster"), Dixie Maddrey Team, and Does 1-10, and asserted various claims arising out of the allegedly wrongful foreclosure of Plaintiff's home.

Plaintiff's first amended complaint [DE-37], filed 30 July 2010, added Litton and Dixie Maddrey ("Maddrey") as defendants. The claims stated therein were as follows: (1) unfair and deceptive trade practices and predatory lending (Count One); (2) abuse of process and fraud (Count

---

[2]      Although Defendant BNY has styled its motion as a motion to dismiss for failure to serve the complaint, its motion is properly considered as a motion pursuant to Rule 12(b)(5). A party's failure to comply with Rule 4 of the Federal Rules of Civil Procedure is subject to dismissal pursuant to Rule 12(b)(5). *See* FED. R. CIV. P. 12(b)(5) (explaining a motion to dismiss may be based on "insufficient service of process").

Two); (3) conversion (Count Three); (4) negligent hiring and supervision and conspiracy (Count Four); (5) negligent hiring and supervision and conspiracy (Count Five); and (6) alleged violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its implementing regulation, 12 C.F.R. § 226.1, *et seq.* ("Regulation Z") (Count Six). Later, Plaintiff voluntarily dismissed with prejudice all claims against Countrywide, Decision One, Dixie Maddrey Team, Maddrey, and Lancaster pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. [DE-59, DE-68, DE-74].

On 3 December 2010, Plaintiff filed a Motion for Leave to Amend the Complaint and Join a Party Defendant [DE-83] and a proposed second amended complaint [DE-85] which sought to add eight new defendants and asserted a total of twenty-one causes of action. On 27 December 2010, Litton filed a response in opposition [DE-91] to Plaintiff's request for leave to amend his first amended complaint, to which Plaintiff replied [DE-92]. On 23 February 2011, the court denied the motion to amend without prejudice and directed Plaintiff to file a new motion to amend within fourteen days, properly supported by a memorandum in support and accompanied by a revised proposed second amended complaint. [DE-108].

In the second filing of the proposed second amended complaint [DE-114], filed 9 March 2011, Plaintiff alleged thirteen counts and named as defendants MERS, BNY,[3] Litton, Prommis Solutions, LLC ("Prommis"), J&F, Nationwide, Walker, Chris Meyer ("Meyer"), Matressa Morris ("Morris"), Michele Young ("Young"),[4] Taylor, Does 1-10 and Goldman Sachs ("Goldman")[5]

---

[3]     BNY was formally known as "The Bank of New York as Trustee for the Certificate holders CWABS, Inc. Asset-Backed Certificates, Series 2005-BC1." *See* Ex. T [DE-141.20].

[4]     On 16 April 2012, the district court entered an order dismissing without prejudice Plaintiff's second amended complaint against Young for failure to obtain service in accordance with Fed. R.

3

(collectively "defendants"). Counts V and X allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The remaining counts recite the following state law claims: fraud and conspiracy to commit fraud and misrepresentation and abuse of process (Count I), fraud and misrepresentation (Count II), fraud and misrepresentation and unfair and deceptive trade practices (Count III), negligent supervision (Count IV), common law fraud and injurious falsehood (Count VI), fraud by misrepresentation and unfair and deceptive trade practices (Count VII), conspiracy to commit fraud by the creation, operation and use of MERS system (Count VIII), fraudulent conveyance (Count IX), reformation (Count XI), slander of title (Count XII) and quiet title (Count XIII). Plaintiff invokes federal jurisdiction on the grounds of federal question jurisdiction pursuant to 28 U.S.C. § 1331, diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[6] Second Am. Compl. ¶ 35 [DE-141].

On 19 August 2011, the court granted Plaintiff leave to amend [DE-140] the first amended complaint and directed the Clerk of Court to take into the record Plaintiff's second amended complaint as filed on 9 March 2011 [DE-114]. In so doing, however, the court denied leave to amend Plaintiff's RICO claim (Count V) and his claims for fraudulent conveyance (Count IX) and

---

Civ. P. 4(m). [DE-201].

[5]     Plaintiff does not name Goldman in the caption of the second amended complaint; however, the second amended complaint's factual allegations include Goldman as a defendant. Second Am. Compl. ¶ 16.

[6]     Plaintiff does not expressly allege jurisdiction pursuant to 28 U.S.C. § 1331 or 28 U.S.C. U.S.C. § 1367. Rather, Plaintiff contends the court has subject matter jurisdiction under "18 U.S.C. § 1961-1968 [RICO] and over the statutory and common-law violations of North Carolina and common law." Second Am. Compl. ¶ 35.

reformation (Count XI), finding the allegations in the second amended complaint "clearly insufficient" to establish these claims. [DE-140 at 9-10].

On 2 September 2011, in lieu of filing an answer, Litton filed a motion to dismiss [DE-144] Plaintiff's second amended complaint pursuant to Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure for failure to plead a claim for fraud with the required particularity and to state a claim upon which relief can be granted, respectively. On 21 October 2011, Plaintiff filed a response [DE-151, DE-153][7] in opposition, to which Litton filed a reply [DE-156].

On 28 December 2011, in lieu of filing an answer, MERS filed a motion to dismiss [DE-166] Plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 9 and 12(b)(6). On 17 February 2012, Plaintiff filed a response [DE-188, DE-189][8] in opposition, and MERS did not file a reply.

On 11 January 2012, BNY filed a motion to dismiss [DE-170] for failure to comply with Fed. R. Civ. P. 4(m). On 3 February 2012, Plaintiff filed a response [DE-177, DE-178],[9] to which BNY filed a reply [DE-185].

On 19 January 2012, the J&F Defendants filed a motion to dismiss [DE-175] Plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 9 and 12(b)(6). On 12 February 2012,

---

[7]     DE-151 is entitled as a response to Litton's motion to dismiss while DE-153 is a memorandum in support of Plaintiff's response.

[8]     Despite the title of DE-188 ("Plaintiff's Motion in Opposition to Defendant MERSCORP/MERS'S Motion to Dismiss"), it is a two-page response to MERS' motion to dismiss while DE-189 is a memorandum in support of Plaintiff's response.

[9]     DE-177 is entitled as a response to BNY's motion to dismiss while DE-178 is a memorandum in support of Plaintiff's response.

Plaintiff filed a response [DE-181, DE-184],[10] to which the J&F Defendants did not file a reply.

## II. FACTUAL BACKGROUND

As is proper when considering a motion to dismiss, this court will consider the facts in a light most favorable to Plaintiff.[11] According to the allegations in the second amended complaint and the exhibits attached thereto,[12] on 29 October 2004, Plaintiff executed a promissory note ("the note")

---

[10]     DE-181 is entitled as a response to the motion to dismiss by the J&F Defendants while DE-184, filed 13 February 2012, is a memorandum in support of Plaintiff's response.

[11]     Despite the length of the second amended complaint (40 pages), many of the allegations therein are conclusory with little meaningful factual content and do not constitute factual allegations against any defendant. *See, e.g.*, Second Am. Compl. ¶¶ 3, 19-34. Moreover, Plaintiff's second amended complaint is replete with disjointed and disorganized allegations, making it difficult to ascertain the substance of each claim.

[12]     In reviewing a Rule 12(b)(6) motion, courts "may properly take judicial notice of matters of public record," and "may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting it into a motion for summary judgment. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *accord Feldman v. Law Enforcement Assocs. Corp.*, 779 F. Supp. 2d 472, 486 n.8 (E.D.N.C. 2011) (noting a court may consider on a Rule 12(b)(6) motion "documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned") (citing 5B Wright & Miller, Federal Practice & Procedure § 1357). Matters of public record, in this context, have been understood to include "copies of pleadings and other materials filed in other courts." *Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1252 (D.N.J. 1995). Exhibits that may be incorporated within the pleadings under Rule 10(c) include documents such as affidavits, letters, contracts and loan documentation. *See Eagle Nation, Inc. v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001).
        Accordingly, the court has derived the facts controlling its analysis from Plaintiff's second amended complaint, as well as the recorded documents contained in the Wake County Register of Deeds, the state court pleadings from the BNY foreclosure action against Plaintiff and foreclosure-related notices to Plaintiff from Countrywide, J&F, Litton and Nationwide – all of which were attached as exhibits to the seconded amended complaint.

evidencing a loan in the amount of $264,000.00 for the benefit of Decision One,[13] which was secured by a deed of trust on 5721 Clarks Fork Drive, Raleigh, North Carolina ("the property") listing MERS as nominee for the lender and the lender's successors and assigns and recorded in the Wake County Registry.[14] Ex. A [DE-4.2]; Ex. C [DE-4.4].

## A.    First Foreclosure

In a letter dated 9 September 2009, Nationwide notified Plaintiff that a hearing with the Clerk of Superior Court for Wake County ("the Clerk") in connection with the foreclosure of the property was scheduled for 16 October 2008 and advised of the amount required to payoff the loan. Ex. D [DE-141.4]. On 16 October 2008, Plaintiff visited the Clerk's office for the foreclosure hearing; however, Plaintiff was advised by a representative of Nationwide that the hearing would be continued to a later date. Second Am. Compl. ¶ 57; Ex. R [DE-141.18]. On 18 November 2008, Walker, as Substitute Trustee and on behalf of Nationwide,[15] filed a Motion for Continuance with the Clerk requesting the foreclosure hearing set for 16 October 2008 be continued to 8 January 2009, citing the reason as "Missing Lenders [sic] Affidavit." Second Am. Compl. ¶ 58; Ex. D-1 [DE-141.3]. On 8 January 2009, the Clerk held a foreclosure hearing. Ex. E [DE-141.5]; Second Am.

---

[13]    The second amended complaint at paragraph 41 mistakenly indicates a copy of the note is attached as Exhibit A. Accordingly, the court refers to the copy of the note attached to the original complaint. *See* Ex. A [DE-4.2].

[14]    The second amended complaint at paragraph 41 indicates a copy of the deed of trust is attached as Exhibit B [DE-141.1]. However, Exhibit B contains only the first page of the deed of trust. Accordingly, the court refers to the complete copy of the deed of trust attached to the original complaint. *See* Ex. C [DE-4.4].

[15]    On 2 September 2008, BNY filed an Appointment of Substitute Trustee, appointing, *inter alia,* Walker, Morris and Nationwide as "any one of whom may act" as Substitute Trustees. Ex. C [DE-141.2].

Compl. ¶ 60. At the hearing, the Clerk entered an order, drafted by Defendants, allowing the foreclosure sale which included the following findings of fact:

(1)     The Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-BC1, is the holder of the note sought to be foreclosed and it evidences a valid debt owed by Chris Joy[.]

(2)     That said note is now in default and the instrument securing said debt gives the note holder the right to foreclose under a power of sale.

(3)     That notice of this hearing has been served on the record owners of the real estate and to all other persons against whom the note holder intends to assert liability for the debt.

(4)     The debtors have shown no valid legal reason why foreclosure should not commence.

Ex. E [DE-141.5]. Also on 8 January 2009, Defendants filed with the Clerk a copy of the Notice of Default and Acceleration from Countrywide, dated 3 December 2007, notifying Plaintiff that his loan was in serious default, advising of the amount owed to reinstate the loan and informing Plaintiff that the default would not be considered cured unless the amount due was received on or before 2 January 2008. Ex. F [DE-141.6]. At the time Defendants submitted the January 2009 order, "Defendants knew they had not given statutory notice of the hearing to the Plaintiff"[16] and that "no Order of Continuance had been noticed to Plaintiff." Second Am. Compl. ¶ 62.

On 29 January 2009, BNY, Goldman, Litton, Nationwide, Prommis and J&F ("the foreclosing Defendants") unlawfully sold the property. Second Am. Compl. ¶¶ 40, 63. On 12 February 2009, Nationwide conveyed the property to BNY pursuant to a Substitute Trustee's Deed prepared by J&F. Ex. H [DE-141.8]. That same date, Nationwide submitted a letter, *see* Ex. I [DE-

---

[16]     Pursuant to N.C. Gen. Stat. § 45-21.16(c)(7), the debtor must be given notice of his right to appear at the foreclosure hearing and "show cause as to why the foreclosure should not be allowed to be held."

141.9], purporting to enclose a Final Report and Accounting of Sale to the Clerk, *see* Ex. J [DE-141.10]. Second Am. Compl. ¶ 66. On 24 February 2009, however, the Clerk refused this document because the "amended notice of hearing or continuance 1/8/09" was missing. Second Am. Compl. ¶ 67; Ex. J [DE-141.10].

In a letter dated 9 March 2009, Prommis, on behalf of J&F, advised Plaintiff that it represented the purchaser of the property, BNY, at the foreclosure sale conducted 29 January 2009, and that BNY demanded possession of the property within ten days of Plaintiff's receipt of said letter. Second Am. Compl. ¶ 68; Ex. K [DE-141.11]. On 31 March 2009, Defendants J&F, BNY, Prommis and Nationwide attempted to file with representative "SP" of the Clerk's office another "Accounting Checklist for Foreclosure Final," *see* Ex. L [DE-141.12], supported by an unsigned Order of Continuance for a hearing scheduled for 8 January 2009, *see* Ex. M [DE-141.13]. Second Am. Compl. ¶ 69. The Clerk did not file the accounting checklist "because of the unsigned or 'missing' Notice of Continuance." *Id.* Also on 31 March 2009, Walker, on behalf of Nationwide, filed the following documents with representative "BG" of the Clerk's office: (1) an Affidavit of Missing Continuance, *see* Ex. N [DE-141.14]; (2) a revised accounting checklist, *see* Ex. O [DE-141.15]; and (3) a Notice of Continuance indicating a new hearing date of 8 January 2009, *see* Ex. P [DE-141.16]. Second Am. Compl. ¶¶ 72-73. While the affidavit states that Nationwide attached thereto an "executed copy of continuance package that was submitted back in November 2008," *see* Ex. N [DE-141.14], no signed order of continuance was included. Second Am. Compl. ¶ 72.

After visiting the Clerk on 16 October 2008, Plaintiff was not notified of any proceedings in this matter until 1 May 2009, when the Sheriff of Wake County notified Plaintiff that he had to vacate his home within two days. Second Am. Compl. ¶¶ 74-76; Ex. Q [DE-141.17]. Plaintiff's

9

home was emptied of its belongings and padlocked. Second Am. Compl. ¶ 76. Plaintiff's eviction came at a considerable expense, including the "loss of monies to move his personal belongings quickly and the total and complete loss of his home and his home-based business, a limousine service." Second Am. Compl. ¶ 77.

On 15 June 2009, the Clerk entered an order, vacating the Clerk's January 2009 order allowing the foreclosure of sale to proceed and vacating and striking from the records of the Wake County Registry the Substitute Trustee's deed recorded in favor of BNY. Ex. R [DE-141.18]. The court ordered further that if the Substitute Trustee wished to proceed with the foreclosure, it shall first give proper notice to Plaintiff. *Id.* The court's order was based on the following findings of fact:

(1) This proceeding was begun upon the filing of Notice of Hearing on about [sic] September 9, 2008, notifying Chris Joy that a hearing would be held on October 16, 2008 on whether or not his deed of trust would be allowed to be foreclosed.

(2) On October 16, 2008, Chris Joy went to the Clerk of Court's office, where the foreclosure hearing was to be held, and was told by a representative of the Nationwide Trustee Services, Inc. that there would not be a hearing on that date.

(3) From October 16, 2008 until Chris Joy received a Notice to Remove all of his property from his residence at 5721 Clarks Fork Drive, Raleigh, NC, he received no notice of any kind from the Substitute Trustee or any other person, concerning a new hearing date, or any other matter.

(4) On October 16, 2008 and thereafter, until he received his notice from the Sheriff of Wake County, he resided at that address, and there was also another resident of that address, and no mail or any other type of notice was received by either Chris Joy or his friend.

(5) On March 31, 2009, a Notice of Continuance of Hearing was filed by the Substitute Trustee, indicating that the new date was January 8, 2009.

10

(6)     There was in the file an Order of Continuance, which was not signed or dated, but which was filed on March 31, 2009, concerning the new hearing date.

(7)     Chris Joy was never served in any manner with a copy of the Order of Sale, Notice of Sale, Report of Sale, or anything else, until after the holder of the note and deed of trust received a deed from the Substitute Trustee and he was not notified of any other proceedings in this matter until he received a Notice of Eviction from the Wake County Sheriff.

(8)     When Chris Joy received an eviction notice by the Sheriff of Wake County, he was required to move.

*Id.* Pursuant to the order, Nationwide returned to Plaintiff the keys to his home and any items removed therefrom. *Id.*; Second Am. Compl. ¶ 78.

## B.     Second Foreclosure

Following the June 2009 order, Defendants attempted again to foreclose on Plaintiff's deed of trust. On 29 July 2009, Litton mailed to Plaintiff a "Notice Pursuant to NCGS 45-102," notifying him of a past due balance on the note. Second Am. Compl. ¶ 80; Ex. S [DE-141.19]. On 3 August 2009, Defendants BNY, Litton, Nationwide, Prommis, J&F and Goldman "caused a purported Appointment of Substitute Trustee" from BNY to Morris and Nationwide signed by Kimberly Dawson ("Dawson"), Vice President for BNY. Second Am. Compl. ¶ 84; Ex. V [DE-141.22]. According to Plaintiff, the appointment was falsely signed by Dawson "who has never been" a vice president of BNY or "was signed by someone other than" Dawson. Second Am. Compl. ¶ 86. On 5 August 2009, BNY, Litton and Goldman "caused to be sent" to J&F a false Payoff Statement regarding Plaintiff's loan.[17] Second Am. Compl. ¶ 87; Ex. V-1 [DE-141.21]. On 12 August 2009, Decision One filed an Assignment of Deed of Trust with the Wake County Registry signed by Michael Sisley ("Sisley"), Assistant Vice President, assigning all of its rights, title and interest in and

---

[17]     The payoff statement indicates it was sent only by Litton to J&F. Ex. V-1 [DE-141.21].

11

to the Deed of Trust to BNY. Second Am. Compl. ¶ 81; Ex. T [DE-141.20]. The August 2009 assignment stated its effective date "was on or before June 16, 2008." Ex. T [DE-141.20]. According to Plaintiff, at the time of the assignment, Decision One "was defunct, out of business, and no longer licensed to do business in the State of North Carolina" and Sisley was never an assistant vice president of Decision One. Second Am. Compl. ¶¶ 82-83.

On 14 August 2009, Denise Bailey, assistant secretary of Litton, executed a Lender's Affidavit, stating Plaintiff had defaulted in the payment of the indebtedness owed BNY, BNY had demanded foreclosure of the deed of trust and BNY had authorized Nationwide to act on its behalf in the foreclosure proceeding. Second Am. Compl. ¶ 88; Ex. W [DE-141.23]. That same day, Walker, on behalf of Nationwide, filed an Amended Notice of Hearing with the Clerk, notifying Plaintiff that a hearing with respect to the deed of trust would be held on 24 September 2009. Second Am. Compl. ¶ 89; Ex. X [DE-141.23]. On 25 May 2010, Defendants BNY, Goldman, Litton, Nationwide and J&F voluntarily dismissed the second foreclosure action. Second Am. Compl. ¶ 90.

## C.     Third Foreclosure

In 2010, Defendants BNY, Goldman, Litton, Prommis, Nationwide and J&F commenced a third foreclosure action against Plaintiff. Second Am. Compl. ¶ 92. According to the second amended complaint, the third foreclosure "has been continued with no date set for a hearing." *Id.* ¶ 96.

## III. STANDARDS OF REVIEW

## A.     Rule 12(b)(5)

Defendant BNY contends this action should be dismissed pursuant to Rule 12(b)(5) of the

12

Federal Rules of Civil Procedure because Plaintiff failed to effectuate service of process in a timely manner in accordance with Federal Rule of Civil Procedure 4. [DE-170]. Plaintiff argues dismissal of this action for his failure to timely serve BNY would be a waste of judicial economy because "the dismissal would have to be without prejudice." Pl.'s Resp. BNY at 1 [DE-177]. Plaintiff argues further that BNY would suffer no prejudice if the court allowed the delayed service because BNY's counsel has been involved with this case since its inception as counsel of record for Litton. *Id.* Thus, Plaintiff urges the court extend the deadline for service to 17 January 2012, the day Plaintiff perfected service on BNY.[18] *See* [DE-176].

Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). A plaintiff bears the burden of showing that service of process complies with the requirements set forth in Rule 4 of the Federal Rules of Civil Procedure. *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003). The Fourth Circuit has counseled:

> When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.

*Armco, Inc., v. Penrod-Stauffer Bldg. Sys, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within one hundred twenty (120) days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the

---

[18]     The second amended complaint was taken into the record on 19 August 2011 [DE-140]; thus, in accordance with Rule 4(m), Plaintiff had until 19 December 2011 to timely serve BNY therewith.

13

plaintiff can show good cause. FED. R. CIV. P. 4(m). "Good cause requires 'reasonable and diligent efforts to effect service' within the 120-day limit." *United States v. Sea Bay Dev. Corp.*, No. 2:06-CV-624, 2007 U.S. Dist. LEXIS 33734, at *17, 2007 WL 1378544, at *4 (E.D. Va. May 8, 2007) (quoting *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 661 (D. Md. 1986)). Courts typically find good cause to extend the Rule 4(m) time limit where "external factors . . . stifle a plaintiff's due diligence" in perfecting service. *T&S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D. W. Va. 1996); *see also McCollum v. GENCO Infrastructure Solutions*, No. 3:10-BCVB-210, 2010 U.S. Dist. LEXIS 129251, at *6, 2010 WL 5100495, at *2 (E.D. Va. Dec. 7, 2010) (explaining courts have found good cause to extent Rule 4(m)'s deadline "where a defendant evaded plaintiff's attempts to perfect service . . . where a plaintiff readily attempted to, but could not, identify the defendant's home address . . . and where a stay in proceedings during the 120-day period prevented the clerk from issuing a summons) (internal citations omitted). Attorney inadvertence, however, weighs against a finding of good cause. *Id.*

Here, the delay in service in the present case apparently resulted from attorney inadvertence. While Plaintiff places the blame for his failure to timely serve BNY on the alleged failure of BNY's counsel to notify Plaintiff of counsel's engagement by BNY, the undisputed fact is that Plaintiff does not argue that he made "reasonable and diligent efforts to effect service" or that "external factors" prevented him from perfecting service. Moreover, the record indicates Plaintiff never requested an extension of time to serve BNY prior to the December deadline. Plaintiff argues essentially that service of process is a non-issue because BNY's counsel also represents Litton. An attorney's representation of multiple defendants, however, has nothing to do with service of process and the ability of this court to exercise jurisdiction over a defendant. *See, e.g., Koehler v. Dodwell*, 152 F.3d

14

304, 306 (4th Cir. 1998) (explaining the "failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant"). Accordingly, the court concludes that good cause has not been demonstrated and an extension is therefore not required under Rule 4(m).

Nevertheless, the court observes that "[e]ven if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service." *San Giacomo-Tano v. Levine*, No. 98-2060, 1999 U.S. App. LEXIS 26997, at *4, 1999 WL 976481, at *1 (4th Cir. Oct. 27, 1999) (citing *Henderson v. United States*, 517 U.S. 654, 663 (1996)); *see also* FED. R. CIV. P. 4(m) advisory committee's note (explaining that Rule 4(m) "explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown*")(emphasis added). However, in light of this court's recommendation to dismiss Plaintiff's claims against Litton, MERS and the J&F Defendants for reasons discussed below, this court recommends ALLOWING BNY's motion to dismiss Plaintiff's second amended complaint without prejudice pursuant to Rule 12(b)(5).

### B.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court

15

assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

## C.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) requires particularized allegations of the circumstances constituting fraud. Thus, in construing Rule 9(b), courts require that a plaintiff specify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see also Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (explaining in all averments of fraud, a plaintiff must allege (1) precisely what statements were made in what documents or oral representations; (2) the time, place, and person responsible for the statement; (3) the content of and manner in which these statements misled the plaintiff; and (4) what the defendant gained by the alleged fraud); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (explaining "averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged") (citation omitted). Moreover, where there are multiple defendants, a plaintiff "must allege all claims with particularity as to each defendant." *Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 589-90 (M.D.N.C. 2004). As one court explained, in matters involving multiple defendants,

> The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given . . . .

*Id.* (quoting *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F. Supp. 927, 931 (N.D. Ill. 1985)).

## D. Law of the Case Doctrine

Plaintiff argues the law of the case doctrine applies to the arguments raised in Litton's motion to dismiss.[19] *See* Pl.'s Resp. Litton at 7 [DE-153]. In particular, Plaintiff argues Litton raised the same arguments in opposition to Plaintiff's motion for leave to amend and the court decided the arguments in favor of Plaintiff when the court issued its August 2011 order [DE-140] granting

---

[19]    In Plaintiff's responses to the motions to dismiss filed by MERS and the J&F Defendants, Plaintiff implicitly contends the law of the case doctrine forecloses the arguments raised therein. *See* Pl.'s Resp. MERS at 3-4 [DE-189]; Pl.'s Resp. J&F at 4-5 [DE-184].

17

Plaintiff leave to amend the first amended complaint. This court disagrees.

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *L.J. v. Wilbon*, 633 F.3d 297, 308 (4th Cir. 2011) (citation omitted); *accord Agostini v. Felton*, 521 U.S. 203, 236 (1997) (explaining under the law of the case doctrine, "a court should not reopen issues decided in earlier stages of the same litigation"). The doctrine does not apply in the instant matter because the court did not decide any issue of law raised in Litton's motion to dismiss (or in the motions to dismiss filed by MERS and the J&F Defendants) when the court allowed Plaintiff's motion for leave to amend pursuant to Rule 15(a). Plaintiff's argument centers on a misunderstanding of the differing standards of review applied under Rule 15 and Rule 12(b)(6).

"Rule 15 requires that leave to amend shall be freely given when justice so requires, and that leave should be granted with extreme liberality because cases should be decided on the merits, rather than on the pleadings or technicalities." *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1297-98 (N.D. Ga. 2010) (internal quotation marks and citations omitted); FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *accord Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (describing Rule 15(a) as "a liberal rule [which] gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities"). Accordingly, leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber*, 438 F.3d at 426.

In contrast, a motion to dismiss shall be denied where a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S.

at 678 (internal quotation marks omitted). The district court, in allowing Plaintiff's motion for leave to amend, did not determine whether the allegations in the amended complaint were sufficient to state a claim. [DE-140 at 7-8]. Rather, the court simply "did not find cause to disallow [Plaintiff's] claims in light of the liberal standard embraced by Rule 15(a)." *Id.* at 8. However, in so finding, the court "concede[d] that plaintiff's proposed second amended complaint is not a model of clarity, and defendants raise good arguments regarding the technical deficiencies of the allegations therein." *Id.* at 7. Accordingly, granting Plaintiff's motion for leave to amend did not determine whether the allegations raised in the second amended complaint were sufficient to state a claim. *See Waterfront Renaissance Assocs. v. City of Philadelphia*, 701 F. Supp. 2d 633, 640 (E.D. Pa. 2010) (explaining difference between Rule 15 and Rule 12(b)(6) and finding the law of the case doctrine inapplicable because the granting of plaintiff's "motion for leave to amend did not determine whether the [allegations] raised in the amended complaint were sufficient to state a claim"); *see also Manuel v. Gembala*, No. 7:10-CV-4-FL, 2011 U.S. Dist. LEXIS 94421, at *11 n.5, 2011 WL 3240493, at *4 n.5 (E.D.N.C. July 27, 2011) (allowing motion to amend complaint in light of liberal standard of Rule 15(a), but noting that the grant of the motion "of course, does not prejudice a later motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)").

## IV. NORTH CAROLINA'S FORECLOSURE PROCESS AND MERS

Prior to addressing Plaintiff's claim, the court provides a summary of North Carolina's foreclosure process and discusses the role MERS plays in mortgage lending as the focus of Plaintiff's lawsuit is MERS and the alleged foreclosure-related actions by the remaining defendants conducted on behalf of or in conjunction therewith.

19

**A.     North Carolina's Foreclosure Process**

In North Carolina, the foreclosure of real property can be effected through either a judicial action or through a power of sale provision in a deed of trust. *See United Carolina Bank v. Tucker*, 99 N.C. App. 95, 97, 392 S.E.2d 410, 411 (1990) (explaining judicial sales and foreclosures by power of sale are governed by N.C. Gen. Stat. § 1-339.1 *et seq.* and N.C. Gen. Stat. § 45.21.1 *et seq.*, respectively). Nevertheless, the majority of North Carolina foreclosures are by power of sale. *See* 2-13 Webster's Real Estate Law in North Carolina § 13.31 (explaining "almost all deeds of trust . . . executed in North Carolina [] contain a 'power of sale' provision giving the trustee or mortgagee the 'power' to sell the mortgaged property in the event of default"). "A power of sale is a contractual arrangement in a deed of trust which confers upon the trustee or mortgagee the power to sell the real property mortgaged, without a court order, in the event of a default." *See In re Brown*, 156 N.C. App. 477, 486, 577 S.E.2d 398, 404 (2003) (quoting *In re Michael Weinman Assoc.*, 333 N.C. 221, 227, 424 S.E.2d 385, 388 (1993)). The trustee of a deed of trust, however, stands in a fiduciary relationship with both the debtor and creditor. *In re Vogler Realty, Inc.*, __ N.C. __, 722 S.E.2d 459, 465 (2012). In the context of a deed of trust:

> The trustee for sale is bound by his office to bring the estate to a sale under every possible advantage to the debtor as well as to the creditor[,] and he is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and the creditor alike, apprising both of the intention of selling, that each may take the means to procure an advantageous sale. He is charged with the duty of fidelity as well as impartiality, of good faith and every requisite degree of diligence, of making due advertisement and giving due notice. Upon default his duties are rendered responsible, critical and active and he is required to act discreetly, as well as judiciously, in making the best use of the security for the protection of the beneficiaries.

*Id.* (*quoting Mills v. Mut. Bldg. & Loan Ass'n*, 216 N.C. 664, 669, 6 S.E.2d 549, 552 (1940)).

20

Under North Carolina law, a secured party initiates the foreclosure under the power of sale clause by requesting the trustee under the deed of trust to file a special proceeding with the clerk of court in the county in which the property is located.[20] In particular, the trustee institutes foreclosure proceedings by filing a notice of hearing with the clerk of superior court. N.C. GEN. STAT. § 45-21.16(a); *accord In re Cornblum*, No. COA11-534, 2012 N.C. App. LEXIS 524, at *6, 2012 WL 1301199, at *3 (N.C. Ct. App. Apr. 17, 2012) (explaining "[i]n order to exercise the power of sale granted in a mortgage or deed of trust, the mortgagee or trustee must initiate a hearing before the clerk of court"). At the hearing, the mortgagee or trustee must prove, and the clerk must find, *inter alia*, the following elements: (1) the existence of a valid debt of which the party seeking to foreclose is the holder; (2) a default; (3) a right to foreclosure under the deed of trust; and (4) a notice of the hearing[21] to those entitled to such notice. N.C. GEN. STAT. § 45-21.16(d); *accord In re Bass*, ___ N.C. App. ___, 720 S.E.2d 18, 22 (2011).[22]

---

[20]    It is not uncommon for the creditor to substitute the original trustee with the person, firm or corporation who will be conducting the foreclosure. This document must be filed with the Register of Deeds where the property is located. *See* N.C. GEN. STAT. § 45-10 (providing holders of promissory notes "secured by . . . deeds of trusts . . . may, in their discretion, substitute a trustee whether the trustee then named in the instrument is the original or a substituted trustee or a holder or owner of any or all of the obligations secured thereby, by the execution of a written document properly recorded" pursuant to North Carolina law).

[21]    *See In re Brown*, 156 N.C. App. at 483, 577 S.E.2d at 402 ("In a foreclosure proceeding, the trustee is charged with the duty to effect service of the notice of hearing.")

[22]    "The North Carolina Legislature added a fifth consideration, which expired 31 October 2010, requiring the clerk to determine whether the underlying mortgage debt was a subprime home loan, and, if it was a subprime loan, whether written notice of the foreclosure proceedings was provided at least 45 days prior to filing notice of the foreclosure hearing with the superior court." *In re Bass*, 720 S.E. 2d at 22 n.2. Also, a sixth consideration requires a clerk confirm that the power of sale is not exercised "during, or within 90 days after a . . . debtor's period of military service." N.C. GEN. STAT. § 45-21.16(d) (citing N.C. GEN. STAT. § 45-21.12A).

A party may challenge a foreclosure proceeding under either N.C. Gen. Stat. § 45-21.16 or N.C. Gen. Stat. § 45-21.34. *See Harty v. Underhill*, __ N.C. App. __, 710 S.E.2d 327, 330 (2011). "If a party wishes to challenge the clerk's findings pursuant to N.C. Gen. Stat. § 45-21.16(d), the party must appeal to the judge of the district or superior court having jurisdiction within 10 days." *In re Carter*, No. COA11-990, 2012 N.C. App. LEXIS 336, at *5, 2012 WL 705596, at *2 (N.C. Ct. App. Mar. 6, 2012); N.C. GEN. STAT. § 45-21.16(d1). "[T]he superior court, like the clerk of court, is limited in its review to determination of [the same] factual issues set out in N.C. Gen. Stat. § 45-21.16(d)," *In re Hall*, __ N.C. App. __, 708 S.E.2d 174, 176-177 (2011); however, in conducting its review, the superior court may consider evidence of legal defenses tending to negate any of the four findings required under N.C. Gen. Stat. § 45-21.16. *See In re Goforth Properties, Inc.*, 334 N.C. 369, 374-75, 432 S.E.2d 855, 859 (1993). Where a party wishes to raise equitable defenses, a party may "apply to a judge . . . to enjoin [the foreclosure] sale" pursuant to N.C. Gen. Stat. § 45-21.34. *Harty*, 710 S.E.2d at 330.

## B. The Role of MERS

The majority of the allegations in Plaintiff's second amended complaint are largely based on his criticism of MERS, which Plaintiff contends was created "to undermine and attempt to eviscerate long-standing principles of real property law" Second Am. Compl. ¶ 3, and centers on the premise that MERS is not a legitimate business and as such, never had authority to assign Plaintiff's deed of trust. *See, e.g., id.* ¶¶ 42, 44, 46, 48. Plaintiff's lawsuit is also premised on the fact that MERS does not have a financial interest in the note, which according to Plaintiff, renders MERS' beneficiary status in the deed of trust a "sham." *See, e.g., id.* ¶¶ 43-44,47, 152, 216.

The role and authority of MERS has been the focus of many lawsuits throughout the nation

22

over the past few years. A recent case in this district succinctly described the role of MERS:

> MERS maintains an electronic registry that stores information as to who originates, services, and owns mortgage loans. *See Rosa v. Mortgage Elec. Registration Sys., Inc.*, No. 10-12141-PBS, __ F. Supp. 2d __, 2011 U.S. Dist. LEXIS 110151, at *11-*12, 2011 WL 5223349, at *3 (D. Mass. Sept. 9, 2011). *See also In re Tucker*, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010) (explaining MERS "provides a system for registering who holds a particular note, and who is therefore empowered to exercise rights under the corresponding mortgage or deed of trust"). MERS has several members, known as member firms, which subscribe to MERS and pay fees for MERS' services and access to MERS' system. *Id.* (citation omitted). At the origination of a residential loan, the lender takes possession of a promissory note, *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, No. 09-2119, 2011 U.S. Dist. LEXIS 117107, at *36, 2011 WL 4550189, at *3 (D. Ariz. Oct. 3, 2011) and the borrower and lender agree that MERS is designated in the deed of trust as a "nominee" for the lender and the lender's successors and assigns as well as the "beneficiary" of the deed. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1039 (9th Cir. 2011). "MERS is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan." *[Id]*. at 1039-1040 (citations omitted). In other words, a promissory note does not confer any rights on MERS nor does it name MERS as a party to the note.
>
> Rather, MERS' rights are defined solely by the deed of trust and because it is a nominee only, its rights and duties under the deed of trust are limited. *See* Black's Law Dictionary 478 (2nd ed. 2001) (defining nominee as "[a] person designated to act in place of another, usu[ally] in a very limited way" or "[a] party who holds bare legal title for the benefit of others . . . ."). Its "nominee" status allows the transfer of servicing rights of the note among MERS members without the need to publicly record such assignments; instead assignments of the note are tracked by MERS' electronic system. *See Rosa*, 2011 U.S. Dist. LEXIS 110151, at *11, 2011 WL 5223349, at *4 (citation omitted). *See also In re Tucker*, 441 B.R. at 645 (explaining "the MERS website posts a toll-free number that borrowers may call to learn how to obtain information about the holder and status of their loan). As long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner. *See In re Tucker*, 441 B.R. at 646 (explaining MERS serves as nominee for the original lender "under the Deed of Trust from the inception, and [] bec[omes] [nominee] for each subsequent note-holder under the Deed of Trust when each such noteholder negotiate[s] the [n]ote to its successor and assign"). "Once beneficial ownership of the note is transferred to a non-MERS member, MERS will assign the [deed of trust] and the assignment will be recorded with the registry of deeds." *Rosa*, 2011 U.S. Dist. LEXIS 110151, at *11, 2011 WL 5223349, at *3 (alteration added & citation omitted).

23

*Ward v. Sec. Atl. Mortg. Elec. Registration Sys.*, No. 5:10-CV-119-F, 2012 U.S. Dist. LEXIS 35380, *13-*16 n.5, 2012 WL 871119, at *5 n.5 (E.D.N.C. Mar. 14, 2012).

Here, Plaintiff contends that MERS had no authority under the deed of trust (and thus had no authority to assign any rights therein) and the designation of MERS as a beneficiary thereof "was done for the purpose of deception, fraud, [and] harming the Plaintiff." Second Am. Compl. ¶ 42. At the outset, the court notes that many of Plaintiff's allegations regarding MERS are undercut by the terms contained in Plaintiff's deed of trust, which describe MERS' role regarding Plaintiff's loan. Indeed, by signing the deed of trust,[23] Plaintiff agreed to the terms therein, including the use of MERS. For example, Plaintiff agreed that MERS would act "as nominee for Lender and Lender's successors and assigns," and serve as the "beneficiary" of the deed of trust. Ex. C ¶ E [DE-4.4 at 1]. Thus, despite Plaintiff's contention to the contrary, the deed of trust unequivocally identifies MERS and its position. Also, Plaintiff agreed that MERS

> holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right[] to exercise any or all of those interests [granted by the borrower in the Deed of Trust], including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . .

Ex. C ¶ R [DE-4.4 at 3]. Plaintiff further agreed that "[t]he Note or a partial interest in the Note (together with [the deed of trust]) can be sold one or more times without prior notice to Borrower." Ex. C ¶ 20 [DE-4.4 at 9]. In light of the explicit terms of the standard deed signed by Plaintiff, it is evident Plaintiff was on notice of the contents thereof and furthermore, Plaintiff cannot plausibly

---

[23] In signing the deed of trust, Plaintiff specifically "accept[ed] and agree[ed] to the terms and covenants contained in [the deed of trust] and in any Rider executed by Borrower and recorded with it." Ex. C [DE-4.4. at 11].

24

allege that he was misinformed about MERS' role in his home loan. Accordingly, even if Plaintiff now disagrees with the use of MERS, he cannot use such dissatisfaction to claim the mortgage was flawed and void his loan.

Moreover, while Plaintiff contends MERS is "unlicensed to conduct mortgage lending or any other type of business in the State of North Carolina," Second Am. Compl. ¶ 46, this court's research has failed to uncover any case finding MERS violates North Carolina law. Additionally, other courts have held that MERS is lawful and accordingly has the authority to assign its rights under deeds of trust and has standing to participate in the foreclosure process. *See, e.g., Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11-CV-62, 2012 U.S. Dist. LEXIS 7654, at *17-*18, 2012 WL 204288, at *5 (W.D. Va. Jan. 24, 2012) (finding MERS has authority to assign its rights under deeds of trust and the assignment at issue "was permitted by the terms of the deed of trust, which, . . . [p]laintiff signed" and collecting cases); *Cervantes v. Countrywide Home Loans*, Inc., 656 F.3d 1034, 1044-45 (9th Cir. 2011) (discussing the role of MERS and dismissing plaintiffs' claim for conspiracy to commit fraud through the MERS system in part because "[b]y signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents"); *Santarose v. Aurora Bank FSB*, No. H-10-720, 2010 U.S. Dist. LEXIS 53708, at *16, 2010 WL 2232819, at *5 (S.D. Tex. June 2, 2010) (noting the deed of trust listed "MERS as a nominee of the lender and as a beneficiary under that security instrument" and "[b]y the plain language of the [d]eed of [t]rust, MERS had the right to foreclose the property").[24] The court now turns to Plaintiff's claims.

---

[24] Plaintiff's allegations in his second amended complaint also suggest that Plaintiff believes the separation of the note from the deed of trust made any subsequent transfers of the note or the deed of trust void under North Carolina law. *See, e.g.*, Second Am. Compl. ¶ 42 (contending the note and deed of trust "are not held by the same entity or party") and ¶ 150 (stating the note and deed of trust were "severed or bifurcated at the closing table"). This "split the note" or "separation of

## V. MOTIONS TO DISMISS BY LITTON, MERS AND THE J&F DEFENDANTS

Plaintiff's second amended complaint, as allowed, alleges ten purported causes of action, only one of which raises a federal question. Accordingly, the court addresses Plaintiff's federal law claim first and then addresses Plaintiff's claims arising under state law.

### A.    Count X: FDCPA claim against Litton

In Count X, Plaintiff alleges Litton violated section 1692e of the FDCPA.[25]  Second Am.

---

note" theory of mortgage law has been consistently rejected by courts which have considered its merit. *See, e.g., Cervantes*, 656 F.3d at 1044 ("[T]he plaintiffs advance a novel theory of wrongful foreclosure. They contend that all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the system splits the deed from the note, and, thus, no party is in a position to foreclose."); *Kiah v. Aurora Loan Servs.*, LLC, No. 10-40161-FDS, 2010 U.S. Dist. LEXIS 121252, at *12, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) ("Plaintiff's theory that the note and the mortgage somehow became disconnected from one another, and that the mortgage should disappear as a result, is [] not tenable as a matter of law."). Moreover, under North Carolina law, which is consistent with general principles of mortgage law, the mortgage follows the note. *See In re Robinson*, No. 07-02146-8-JRL, 2011 Bankr. LEXIS 4504, at *8, 2011 WL 5854905, at *3 (E.D.N.C. Nov. 22, 2011) (stating "it is well settled under North Carolina law that the deed of trust follows the note"); *Jenkins v. Wilkinson*, 113 N.C. 532, 535-536, 18 S.E. 696, 697 (1893) ("The transfer of the note carries with it the security without any formal assignment or delivery, or even mention of the latter.") (quoting *Carpenter v. Longan*, 83 U.S. 271 (1873); *see also* N.C. Gen. Stat. § 47-17.2 ("A transfer of the promissory note . . . secured by the deed of trust . . . that constitutes an effective assignment under the law of this State shall be an effective assignment of the deed of trust . . . ."); Restatement (Third) of Property, Mortgages § 5.4(a) ("A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.")

[25]     In his second amended complaint, Plaintiff alleges that Goldman, Litton, Nationwide and Prommis are debt collectors as defined by the FDCPA. *See* Second Am. Compl. ¶ 230. Accordingly, Litton is the only moving defendant subject to Count X.

Nevertheless, despite the explicit allegations contained in Count X, Plaintiff argues in his responses to motions filed by both MERS and the J&F Defendants that his FDCPA count implicitly included other defendants. In Plaintiff's response to MERS' motion to dismiss, Plaintiff states MERS is not a debt collector and thus withdraws Count X against MERS. Pl.'s Resp. MERS at 20 [DE-189]. As noted above, Plaintiff's second amended complaint does not include MERS in Count X; thus, Plaintiff's dismissal is moot. *See* Second Am. Compl. ¶¶ 229-234. Also, in response to the statement by the J&F Defendants that "Plaintiff does not appear to assert [the FDCPA] claim against the J[&]F Defendants," J&F Defs.' Mem. at 16 [DE-175.1], Plaintiff contends otherwise, alleging

26

Compl. ¶ 32. Litton argues that it is not subject to the FDCPA because it is not a debt collector with respect to Plaintiff's mortgage. Litton's Mem. Supp. Mot. Dismiss Second Am. Compl. at 11 [DE-145].

Congress established the FDCPA to "eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). Specifically, the FDCPA prohibits, *inter alia*, any false, deceptive or misleading representations or means, 15 U.S.C. § 1692e, to collect or attempt to collect any debt. The FDCPA creates a private cause of action against debt collectors who violate its provisions. *See* 15 U.S.C.

---

the J&F Defendants "operated as debt collectors" through "their control of Defendants Nationwide Trustee Services and Prommis Solutions." Pl.'s Resp. J&F at 8 [DE-184]. Plaintiff does not name the J&F Defendants in Count X and Plaintiff may not rely on any assertion in his response to meet the requirements of Rule 8. *See Wroblewski v. United States*, No. DKC 08-3368, 2011 U.S. Dist. LEXIS 49297, at *11, 2011 WL 1769989, at *4 (D. Md. May 9, 2011) (noting a plaintiff's "various assertions in her motion papers have no effect on the sufficiency of her pleadings"). Accordingly, this court recommends the J&F Defendants' motion to dismiss as to Plaintiff's FDCPA claim be ALLOWED and Plaintiff's FDCPA claim against the J&F Defendants, to the extent one is alleged, be DISMISSED WITH PREJUDICE.

At this point, the court is compelled to address Plaintiff's citation to and reliance on the affidavit of Kashara Lewis ("the Lewis affidavit") throughout his response to the J&F Defendants' motion to dismiss. *See* Pl.'s Resp. J&F at 3, 5, 6-7 (citing Ex. Y [DE-141.25]). In the affidavit, attached to Plaintiff's second amended complaint and cited therein only in support of his now-dismissed RICO claim, *see* Second Am. Compl. ¶ 187, Lewis states J&F owns Nationwide. Ex. Y ¶¶ 12, 36 [DE-141.25]). While no claims sounding in corporate law are alleged in the second amended complaint, it is evident that Plaintiff relies on the Lewis affidavit to suggest that actions by Nationwide and Prommis should be attributed to J&F based on an unidentified theory of corporate liability. However, Plaintiff included no allegations in the second amended complaint to support such a theory. Moreover, while the Lewis affidavit contains allegations of ownership, it provides no insight into how J&F had any control over the actions of Nationwide or Prommis. *Cf. United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."); *Susko v. Cox Enters.*, No. 5:07-CV-144, 2008 U.S. Dist. LEXIS 69901, at *22, 2008 WL 4279673, at *8 (N.D. W. Va. Sept. 16, 2008) (explaining "a court cannot ignore separate corporate structures and imply liability, simply because one corporation controls another or the two such corporations share officers"). Accordingly, any reliance by Plaintiff on the Lewis affidavit in support of his claims against J&F is misplaced as the affidavit has no bearing on whether Plaintiff has sufficiently alleged any cognizable cause of action against J&F.

§ 1692k.

To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005) (citing *Fuller v. Becker & Poliakoff*, 192 F. Supp. 2d 1361 (M.D. Fla. 2002)). The standard of review for evaluating FDCPA claims is that of the "least sophisticated debtor." *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999). "Although naive, the least sophisticated debtor is not 'tied to the very last rung of the intelligence or sophistication ladder.'" *Beasley v. Sessoms & Rogers*, No. 5:09-CV-43-D, 2010 U.S. Dist. LEXIS 52010, at *10, 2010 WL 1980083, at *4 (E.D.N.C. March 1, 2010) (quoting *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)); *see Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (concluding that the least sophisticated debtor "isn't a dimwit").

1.    Consumer Debt

Consumer debt is defined as an obligation to pay money arising from a transaction whose subject (e.g., property) is primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Here, Plaintiff alleges he is a debtor on a home loan secured by a deed of trust and that he was targeted for debt-collection activity in the form of foreclosure proceedings. Am. Compl. ¶¶ 41; Ex. A [DE-4.2]; Ex. B [DE-141.1]. As the enforcement of a security interest through foreclosure falls within the parameters of the FDCPA, *see Wilson v. Draper & Goldberg*, PLLC, 443 F.3d 373, 376 (4th Cir. 2006), Plaintiff has alleged sufficient facts that he was the object of collection activity arising from a consumer debt as defined by the FDCPA.

28

2. Debt Collector

Next, the court must determine whether the FDCPA is applicable to Litton. The FDCPA prohibits abusive debt collection practices by "debt collectors." *See* 15 U.S.C. § 1692(e). "Debt collectors" include

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). However, that term does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii); *see* S. Rpt. No. 95-382, 95th Cong., 1st Sess. 3-4 (explaining the definition of debt collector does not cover "the collection of debts, such as mortgages . . ., by . . . mortgage service companies . . . so long as the debts were not in default when taken for servicing . . ."). Therefore, the servicer of a residential mortgage loan is not a "debt collector" if the loan in question is not in default when acquired by the servicer. *See Adam v. Wells Fargo Bank*, N.A., No. ELH-09-2387, 2011 U.S. Dist. LEXIS 96604, at *67, 2011 WL 3841547, at *20 (D. Md. Aug. 26, 2011) (stating it "is well-settled . . . that . . . *mortgage servicing companies* are not debt collectors and are statutorily exempt from liability under the FDCPA," to the extent that they take action to collect debts that were not in default at the time they acquired the debts) (quoting *Scott v. Wells Fargo Home Mtg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) (emphasis in original)); *accord Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 648 (E.D. Va. 2010) (stating "mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA") (citation omitted).

29

Here, Plaintiff has not alleged that his mortgage was in default when Litton became Plaintiff's mortgage servicer. In fact, Plaintiff has alleged no facts in support of his legal conclusion that Litton is a debt collector nor has Plaintiff provided any allegations as to the status of his mortgage at the time the various foreclosure proceedings were instituted. Neither *Twombly* nor *Iqbal* requires the court to comb through Plaintiff's exhibits in search of facts to substantiate Plaintiff's claim. *See Manuel*, 2010 U.S. Dist. LEXIS 105167, at *36, 2010 WL 3860407, at *13 (refusing to "embark on an excursion to interpret plaintiffs' verbose, tortured amended complaint to extract a [] claim that might, but might not, lie hidden or buried somewhere within it"). Nevertheless, the court observes upon its own review of the second amended complaint and exhibits attached thereto that Litton's July 2009 notice advising Plaintiff that his loan was in default and providing a list of HUD-approved counseling agencies, *see* Ex. S [DE-141.19], was mailed to Plaintiff almost two years after Countrywide advised Plaintiff that his loan was "in serious default." Ex. F [DE-141.6]. These exhibits give rise to a plausible inference that Plaintiff's debt was in default when taken over by Litton for servicing. *See Twombly*, 550 U.S. at 555, 570 (requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] [a] claim[] across the line from conceivable to plausible"). Accordingly, the court finds Plaintiff's second amended complaint contains sufficient factual matter, taken as true, to suggest Litton is a debt collector under the FDCPA.

3.    Violation of the FDCPA – 15 U.S.C. § 1692e

Even if Litton qualified as a debt collector, however, Plaintiff has failed to state a claim under section 1692(e). Conduct prohibited by the FDCPA includes the "use of false, deceptive, or misleading representation or means in connection with the collection of any debt" 15 U.S.C. § 1692e

– conduct in which Plaintiff contends Litton has engaged. Second Am. Compl. ¶ 231. Section 1692e "provides a non-exhaustive list of 'conduct' that satisfies this general prohibition." *Warren v. Sessoms & Rogers, P.A.*, __ F. 3d __, 2012 U.S. App. LEXIS 552, at *18, 2012 WL 76053, at *7 (4th Cir. 2012); *see Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (noting the illegality of false statements "regardless of whether the representation in question violates a particular subsection of [1692e]").

Plaintiff's FDCPA account does not allege a violation under any particular subsection of 15 U.S.C. § 1692e. In fact, Plaintiff's FDCPA count simply provides that Litton (as well as Goldman, Nationwide and Prommis ) filed "false, deceptive, misleading, and perjured affidavits in connection with the collections of debts" and Plaintiff is entitled to damages a result. Second Am. Compl. ¶¶ 231-33. Plaintiff's FDCPA claim is a clear example of a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and is not a "showing . . . of entitlement to relief." *Id.* at 556 n.3. Plaintiff does not identify the "affidavits," or state how the how the affidavits were false or deceptive. Moreover, Plaintiff does not plead any facts showing Litton filed the alleged false affidavits. Rather, Plaintiff, who is represented by counsel, relies on the court to ferret out facts buried in a forty page complaint and over fifty pages worth of exhibits and search for any allegations therein supporting the FDCPA claim.

A review of the allegations in the second amended complaint suggests the following filings were allegedly fictitious or false or contained such statements:

(1)     a "fictitious" Appointment of Substitute Trustee" dated 2 September 2008, Ex. C [DE-141.2];

(2)     a state court order dated 8 January 2009 falsely advising that Plaintiff had been notified of the foreclosure hearing, Ex. E [DE-141.5];

31

(3)     a "void" Substitute Trustee's Deed, Ex. H [DE-141.8];

(4)     an affidavit dated 30 March 2009 stating the required Notice of Continuance had been filed and served on Plaintiff in November 2008, Ex. N [DE-141.14];

(5)     a "false, phony and fictitious" Assignment of Deed of Trust dated 12 August 2009, Ex. T [DE-141.20];

(6)     a "false, fictitious and legally invalid" Appointment of Substitute Trustee dated 3 August 2009, Ex. V [DE-141.22];

(7)     a "false" Payoff Statement dated 5 August 2009, Ex. V-1 [DE-141.21];

(8)     a "false and legally invalid" Lender's Affidavit dated 14 August 2009, Ex. W [DE-141.23];

(9)     a "fraudulently filed" Amended Notice of Hearing dated 14 August 2009, Ex. X [DE-141.24]

*See* Am. Compl. ¶¶ 53, 60, 65, 71, 81, 84-85, 87, 88.

At the outset, the court observes that only the payoff statement and lender's affidavit are associated with Litton. The remaining documents were signed by other parties. As such, the court examines only these statements in determining whether Litton used "false, deceptive, or misleading representation or means" in connection with Plaintiff's debt. Regarding the payoff statement, Plaintiff alleges only that it was "false." Similarly, Plaintiff states only that the lender's affidavit is "false and legally invalid." Plaintiff does not allege that he did not owe a debt nor does Plaintiff state that his loan was not in default. Rather, it appears Plaintiff's allegations are premised on the belief that MERS lacks authority to assign the deed of trust; thus, BNY "lacked standing and the capacity to foreclose." *See, e.g.*, Am. Compl. ¶¶ 48, 54. Aside from the fact that Plaintiff's contentions regarding MERS are undercut by the terms of Plaintiff's deed of trust and unsupported by caselaw, the court notes further that Plaintiff lacks standing to challenge the validity of any assignment by

32

MERS. *See Ward*, 2012 U.S. Dist. LEXIS 35380, \*16-\*17, 2012 WL 871119, at \*5 (noting the validity of any assignment by MERS does not affect a borrower's underlying obligation). Finally, Plaintiff's contention that BNY lacked capacity to foreclose, is a "collateral attack on a foreclosure proceeding and judgment, which the law does not permit." *Douglas v. Pennamco, Inc.*, 75 N.C. App. 644, 646, 331 S.E.2d 298, 300 (1985). If Plaintiff believed BNY was not the holder of a valid debt, he had remedies available to him within the state court system. *See Harty*, 710 S.E.2d at 327; *see also Douglas*, 75 N.C. App. at 646, 331 S.E.2d at 300 (explaining "if the foreclosure proceeding was not authorized for any reason or if it was irregularly conducted, it was incumbent on plaintiff to raise that issue in that proceeding either by objection or motion in the cause") (citation omitted). Accordingly, the court recommends Litton's motion to dismiss as to Plaintiff's FDCPA claim be ALLOWED and Plaintiff's FDCPA claim be DISMISSED WITH PREJUDICE.

The court must raise issues of subject matter jurisdiction *sua sponte* if it appears at any time that further exercise of the court's jurisdiction may be improper. *See Andrus v. Charlestone Stone Prods. Co., Inc.*, 436 U.S. 604, 608 n.6 (1978). Dismissal of the federal law claim eliminates any federal question jurisdiction, leaving only the claims arising under state law. Nevertheless, federal subject matter jurisdiction may exist when there is complete diversity of citizenship between the parties and more than $75,000 in controversy. 28 U.S.C. § 1332; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (explaining § 1332's requirement of complete diversity is satisfied when the "citizenship of each plaintiff is diverse from the citizenship of each defendant"). According to Plaintiff's second amended complaint, the entity defendants are diverse to Plaintiff. *See* Second Am. Compl.¶¶ 1, 4-5, 9-10, 14, 16. While not challenged by the moving defendants, the court observes Plaintiff has included no allegations as to the citizenship of the individual defendants.

33

Since Plaintiff has failed to plead facts supporting complete diversity of citizenship as required by 28 U.S.C. § 1332(a) and "[g]iven [] the federal claims have been dismissed, the [c]ourt must determine whether to continue to exercise supplemental jurisdiction over the state law claims, or remand the case to state court." *J.S. ex rel. Simpson v. Thorsen*, 766 F. Supp. 2d 695, 712 (E.D. Va. 2011) (alterations added). The doctrine of supplemental jurisdiction provides that federal courts have discretion to retain or dismiss non-federal claims when the federal basis for an action is no longer applicable. *See* 28 U.S.C. § 1367. In the interest of avoiding "[n]eedless decisions of state law," the Supreme Court has stated that, when "federal claims are dismissed before trial . . . state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting "trial courts enjoy wide latitude in determining whether [] to retain jurisdiction over state claims when all federal claims have been extinguished").

Accordingly, the remainder of Plaintiff's claims are addressed to assist the district court should the court find diversity jurisdiction exists or if not, nevertheless choose to exercise supplemental jurisdiction over Plaintiff's non-federal claims.

**B.    Count I: Abuse of Process claim against Litton and J&F[26]**

Plaintiff's first state cause of action is entitled, *inter alia*, "abuse of process [by] all defendants." Second Am. Compl. at 9 (emphasis omitted). A review of Count I indicates, however, that as to the 12(b)(6) moving defendants, only Litton and J&F are named therein with respect to

---

[26]    Count I apparently embodies three claims: (1) fraud; (2) conspiracy to commit fraud; and (3) abuse of process. The fraud-based claims are discussed below in Section D.

abuse of process allegations in connection with the state foreclosure proceedings.[27] *See, e.g.*, Second Am. Compl. ¶¶ 52-54.

"Abuse of process is the misapplication of the civil or criminal process to accomplish some purpose not warranted or commanded by the process." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 602, 646 S.E.2d 826, 831 (2007). In order to sustain such a claim, Plaintiff must show that Litton and J&F began the foreclosure proceedings or used them to obtain an ulterior motive; and once the action had begun, these defendants committed acts which were improper in the regular prosecution thereof. *See Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979) (stating abuse of process "requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding")(citation omitted). "The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used." *Stanback*, 297 N.C. at 200, 254 S.E.2d at 624. Plaintiff's claim for abuse of process apparently rests on the alleged participation of Litton and J&F in the foreclosure process.

At the outset, the court notes the implausibility of Litton or J&F initiating the foreclosure

---

[27]  Indeed, Count I is devoid of any allegations regarding the role of MERS. Accordingly, this court recommends MERS' motion to dismiss as to Plaintiff's abuse of process claim be ALLOWED and Plaintiff's abuse of process claim against MERS, to the extent one is alleged, be DISMISSED WITH PREJUDICE.

Furthermore, the court notes the second amended complaint is devoid of any allegations against Taylor whatsoever with the exception of alleging that Prommis, Nationwide or J&F "employed" Taylor and that Taylor "operated and participated in [a] scheme as an attorney[,] employee, partner or agent of" Prommis, Nationwide and J&F. Second Am. Compl. ¶¶ 13, 23. These allegations are insufficient to state any cognizable cause of action against Taylor. Accordingly, this court recommends the J&F Defendants' motion to dismiss as to all of Plaintiff's alleged claims against Taylor be ALLOWED and Plaintiff's claims against Taylor be DISMISSED WITH PREJUDICE.

proceedings. *See* N.C. GEN. STAT. § 45-21.16(a). When a borrower defaults on a mortgage loan, the lender, pursuant to the terms of the promissory note and deed of trust, is entitled to accelerate the indebtedness and declare the balance immediately due. *See In re Brown*, 156 N.C. App. at 486, 577 S.E.2d at 404. Indeed, this right is explicitly stated in Plaintiff's deed of trust which provides as follows:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this [deed of trust] . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this [deed of trust] without further demand and may invoke the power of sale and any other remedies permitted by applicable law.

Ex. C [DE-4.4 at 10]. Plaintiff's deed of trust provides further that

> If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice . . . [and] after publication of the notice of sale, Trustee . . . shall sell the Property . . .

Ex. C [DE-4.4 at 10]. That is, as explained earlier, the trustee, not the loan servicer, institutes foreclosure proceedings by filing notice of hearing with the clerk. *See* N.C. GEN. STAT. § 45-21.16(a).

Moreover, Plaintiff has failed to allege that Litton or J&F used the foreclosure proceedings to obtain an ulterior motive. In a letter dated 9 March 2009, *see* Ex. K [DE-141.11], J&F advised Plaintiff that it represented the purchaser at the January 2009 foreclosure sale and notified Plaintiff of the purchaser's demand for possession of Plaintiff's property. In a letter dated 29 July 2009, *see* Ex. S [DE-141.19], Litton advised Plaintiff of the past due amount and informed him of the availability of resources to avoid foreclosure. *See* N.C. GEN. STAT. § 45-102 (stating "[a]t least 45 days prior to the filing of a notice of hearing in a foreclosure proceeding on a primary residence,

36

mortgage servicers of home loans shall send written notice by mail to the last known address of the borrower to inform the borrower of the availability of resources to avoid foreclosure . . . ."). While Plaintiff relies on the fact that the January 2009 foreclosure was ultimately set aside and his erroneous belief that MERS is a sham beneficiary, thereby suggesting no defendant, including Litton, had any legal authority to act on behalf of the lender or its assigns, nowhere in the second amended complaint does Plaintiff allege he <u>was not</u> in default. Nevertheless, to the extent Plaintiff believes Litton or J&F submitted their letters in error, courts are"disinclined to hold that a Defendant relying on a belief in the legal sufficiency of an interest in real property is somehow engaging in unscrupulous practices designed to deceive others with an interest in the same property." *Kelley v. CitiFinancial Servs.*, 205 N.C. App. 426, 434, 696 S.E.2d 775, 782 (2010). Accordingly, this court recommends the motions to dismiss by Litton and the J&F Defendants with respect to Plaintiff's abuse of process claim be ALLOWED and Plaintiff's abuse of process claim be DISMISSED WITH PREJUDICE.

## C. Counts I-II, VI-VIII: Fraud claims[28] against Litton, MERS and J&F

Plaintiff's fraud claims are difficult to decipher as allegations of fraud are seemingly strewn throughout the second amended complaint. Allegations in support of each of Plaintiff's counts for fraud are as follows:

(1)    Count I: Plaintiff alleges that Litton and J&F, among others, wrongfully engaged in foreclosure proceedings and in particular, filed a "false, phony and fictitious Appointments [sic] of Substitute Trustee" without "possess[ing] a lawful and valid Assignment of Deed and [sic] Trust from Decision One."

---

[28]    Counts III and VII are identified as fraud claims as well as claims for unfair and deceptive trade practices. However, a review of both counts indicates Count III is best described as a claim for unfair and deceptive practices and is accordingly discussed below while Count VII is a fraud-based claim.

Second Am. Compl. ¶¶ 53-54; Ex. C [DE-141.2].

(2)     Count II: Plaintiff alleges that Litton and J&F, among others, filed a "false, phony and fictitious Assignment of Deed of Trust," a "false, fictitious and legally invalid" Appointment of Substitute Trustee, a "false Payoff Statement," a "false and legally invalid" Lender's Affidavit and a "fraudulent" Amended Notice of Hearing. Second Am. Compl. ¶¶ 81, 84-85, 88; Ex. T [DE-141.20]. Ex. V [DE-141.22], Ex. W [DE-141.23], Ex. X [DE-141.24].

(3)     Count VI: Plaintiff alleges "all of the Defendants [] perpetrate[d] the fraudulent foreclosure" based on "forged and publicly filed false mortgage assignments," "knew or should have known the material representations were false," made such representations "so that the Court and the Plaintiff would believe that the Defendants [sic] BNY had a legitimate claim in the property" and Plaintiff was "injured as a result with the entering of a judgment [by the Clerk] and the facing of foreclosure litigation." Second Am. Compl. ¶¶ 204-06.

(4)     Count VII: Plaintiff alleges (1) the deceptive acts of Litton and J&F, among others, "resulted in a multitude of misrepresentations, including but not limited to the true identity of the Lender, and the fraudulent misrepresentation as to the Mortgagee," and (2) MERS intentionally induced Plaintiff to enter the transaction based on material representations "known to be false" which Plaintiff relied on to his detriment.

(5)     Count VIII: Plaintiff alleges Litton and co-conspirators Goldman, MERS and BNY "participat[ed] in the MERS system," "develop[ed] a system of earning profits from the origination and securitization of residential loans without regard for the rights of Plaintiff," "intentionally utilized . . . MERS . . . for the specific purpose of MERS [] being designated a sham 'beneficiary' in the original deeds of trust securing those loans," "intentionally utilized the MERS system with the unlawful intent and for the unlawful purpose of making it difficult or impossible for Plaintiff . . . to identify and hold responsible the persons and entities responsible for the unlawful actions of all of the Defendants," "agreed to promote and to utilize MERS in an unlawful manner in order to deprive Plaintiff . . . of property." Second Am. Compl. ¶¶ 212, 215, 216-17, 223.

To establish a claim for fraud, a plaintiff must allege that: (1) defendant made a representation of a material past or existing fact; (2) the representation was false; (3) defendant knew the representation was false or made it recklessly without regard to its truth or falsity; (4) the

38

representation was made with the intention that it would be relied upon; (5) plaintiff did rely on it and that his reliance was reasonable; and (6) plaintiff suffered damages because of his reliance. *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 31, 588 S.E.2d 20, 29 (2003).

At the outset, the court notes that the majority of the allegations in support of the fraud claims are nothing more than Plaintiff's opinions and criticisms of MERS. In fact, the basis of Plaintiff's fraud claims is that MERS has no authority under the deed of trust. This allegation is factually unsupported by the record. The deed of trust signed by Plaintiff clearly outlined MERS' role regarding Plaintiff's loan. Plaintiff does not allege facts to show that Litton, J&F or MERS misinformed Plaintiff about MERS' role in the transaction. Nor does Plaintiff assert that he relied on any statements made by any defendant regarding MERS when he decided to enter into the mortgage, or that he would not have agreed to the mortgage if he had received more information about the MERS system. Plaintiff does not allege that he was misinformed about MERS' role as a beneficiary, or the possibility that his loan would be sold and tracked through the MERS systems. Furthermore, Plaintiff "has failed to show that the designation of MERS as a beneficiary caused [him] any injury by, for example, affecting the terms of [his] loans, [his] ability to repay the loans, or [his] obligation[] as borrower[]." *Cervantes*, 656 F.3d at 1042.

Furthermore, Plaintiff fails to plead any of his fraud claims with the requisite particularity. *See* FED. R. CIV. P. 9(b). Indeed, each of the fraud counts are simply legal conclusions not entitled to the assumption of the truth. Moreover, the second amended complaint is devoid of specific allegations with respect to each defendant. It does not inform each defendant of the nature of its alleged participation in the fraud but rather alleges that all defendants participated in the filing of "false" documents. Given these deficiencies, this court recommends the motions to dismiss by

39

Litton, MERS and the J&F Defendants with respect to Plaintiff's fraud claims be ALLOWED and all fraud claims be DISMISSED WITH PREJUDICE.

**D.    Count III: Unfair and Deceptive Trade Practices against Litton and J&F**[29]

In Count III, Plaintiff alleges that Litton and J&F, among others,[30] "instituted another foreclosure against Plaintiff based upon fraudulent documents . . . ." which "intentionally . . . deceive[d]" Plaintiff and that such "acts . . . violated standards of fair trade practices" and Plaintiff was "injured in his business and his person." Second Am. Compl. ¶¶ 92, 94-95.

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, a plaintiff must allege (1) the defendant engaged in an unfair or deceptive act or practice; (2) the defendant's conduct was in or affecting commerce; and (3) the conduct was the proximate cause of an injury to the plaintiff. *See Blis Day Spa, LLC v. Hartford Ins. Group*, 427 F. Supp. 2d 621, 634 (W.D.N.C. 2006). Conduct is considered unfair or deceptive when it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 634 (citing *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)); *accord Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. *Kelly*, 671 F. Supp. 2d at 799 (citations

_____

[29]    While Plaintiff identifies Count VII as both a claim for fraud and unfair and deceptive trade practices, the allegations therein indicate Count VII is a claim for fraud only, which the court has discussed earlier.

[30]    The other defendants included in Plaintiff's UDTPA claim are BNY, Goldman, Prommis and Nationwide. Second Am. Compl. ¶ 92. Count III is devoid of allegations against MERS. Accordingly, this court recommends MERS' motion to dismiss as to Plaintiff's UDTPA claim be ALLOWED and Plaintiff's UDTPA claim against MERS, to the extent one is alleged, be DISMISSED WITH PREJUDICE.

40

omitted). Under North Carolina law, "it is well-settled that 'a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred.'" *Jones v. Harrelson & Smith Contrs., LLC*, 194 N.C. App. 203, 217, 670 S.E.2d 242, 252 (2008) (quoting *Bhatti v. Buckland*, 328 N.C. 240, 243, 400 S.E.2d 440, 442 and collecting cases).

Plaintiff's UDTPA claim is a clear example of a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and is not a "showing . . . of entitlement to relief." *Id.* at 556 n.3. Furthermore, as with the other claims, Plaintiff's UDTPA claim is premised on the erroneous belief that all foreclosure filings were fraudulent because MERS had no rights under the deed of trust. Accordingly, this court recommends the motions to dismiss by Litton and the J&F Defendants with respect to Plaintiff's UDTPA claim be ALLOWED and that said claim be DISMISSED WITH PREJUDICE.

### E. Count IV: Negligent Supervision against J&F

Plaintiff alleges that J&F, among other corporate defendants, had a duty of care to supervise the actions of their employees and agents, whose actions "were unlawful and violated Plaintiff's property rights," J&F knew or should have known that its employees and/or agents acted unlawfully and as a result of the actions by its employees, Plaintiff was injured. Second Am. Compl. ¶¶ 98-104.

North Carolina law recognizes a claim against an employer for negligence in employing an employee whose wrongful conduct injures another. *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 494, 340 S.E.2d 116, 123 (1986). To state a claim for negligent supervision, a plaintiff must allege: (1) "an incompetent employee committed a tortious act resulting in injury to the plaintiff;" and (2) "prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 250 (4th Cir. 2000) (citing *Hogan*,

41

79 N.C. App. at 495, 340 S.E.2d at 124).

Plaintiff's negligent supervision claim is a clear example of a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and is not a "showing . . . of entitlement to relief." *Id.* at 556 n.3. Plaintiff fails to allege incompetency by any employee of J&F resulting in injury to Plaintiff or that J&F knew or had reason to know of the alleged incompetency of any of its employees. In his response, Plaintiff relies on the Lewis affidavit wherein Lewis states Walker, alleged to be "an employee or agent" of Nationwide, Prommis, and J&F, was demoted following alleged errors regarding Plaintiff's foreclosure file. *See* Pl.'s Resp. J&F at 7 [DE-184]; Ex. Y ¶ 22 [DE-141.25]; Second Am. Compl. ¶ 19. As noted earlier, Plaintiff relies on the Lewis affidavit in his second amended complaint in support of his now-dismissed RICO claim only. *See* Second Am. Compl. ¶ 187. Nevertheless, to the extent it should be construed as supporting Plaintiff's negligent supervision claim against J&F, such reliance is unfounded as Plaintiff does not indicate how the Lewis affidavit gives rise to a plausible inference that J&F negligently supervised its employees and that as a result of such supervision, Plaintiff was injured. Accordingly, this court recommends the motion to dismiss by the J&F Defendants with respect to Plaintiff's negligent supervision claim be ALLOWED and that said claim be DISMISSED WITH PREJUDICE.

**F.     Count XII: Slander of Title against Litton, MERS and J&F**

"Slander of title occurs when one publishes matter derogatory to the title to real property with the malicious intent to injure the owner thereof and which in fact does cause injury." *Whyburn v. Norwood*, 47 N.C. App. 310, 315, 267 S.E.2d 374, 377 (1980) (citing *Cardon v. McConnell*, 120 N.C. 461, 27 S.E. 109 (1897); *accord Int'l Visible Sys. Corp. v. Remington-Rand, Inc.*, 65 F.2d 540, 542 (6th Cir. 1933) (stating "[t]hree elements are necessary for the maintenance of [an action for

42

slander:] [t]he words must be: (1) [f]alse; (2) maliciously published; and (3) result in some special

pecuniary loss"); *Carter v. Ozoeneh*, No. 3:09-CV-614-RJC, 2009 U.S. Dist. LEXIS 84441, at *22

(W.D.N.C. Sept. 16, 2009) ("Slander to title claims apply [] to derogatory matter published with

respect to real property."). "Malice is established by showing that the statement regarding title was

not made in good faith, that it was made without probable cause for defendant's belief, or that

defendant could not have honestly entertained a belief in the statement." *Carter v. Ozoeneh*, No.

3:09-CV-614-RJC, 2009 U.S. Dist. LEXIS 84441, at *20-*21, 2009 WL 3003836, at *8 (W.D.N.C.

Sept. 16, 2009) (citing *Cardon*, 120 N.C. at 462, 27 S.E. 109); *Briggs v. Coykendall*, 57 N.D. 785,

790, 224 N.W. 202, 205 (1929) (stating "[t]here can be no malice in the legal sense when the parties

have color of title and have a bona fide belief therein").

Here, Plaintiff alleges that "Defendants BNY, Litton, Goldman, JF, Nationwide and Prommis

["'Slander Defendants"] knowingly and maliciously communicated, in writing, a false statement that

has the effect of disparaging the plaintiff's title to property. The Plaintiff had incurred special

damage as a result." Second Am. Compl. ¶ 238. Plaintiff alleges that the maliciously published

"writing" was in the form of a recorded "Post-Foreclosure Mortgage Assignment" by MERS to the

Slander Defendants, allegedly drafted and signed by "[a]n employee or partner of Defendants Litton,

Nationwide, Prommis and [J&F]." Second Am. Compl. ¶ 239. In short, it appears Plaintiff contends

that the Slander Defendants, including Litton and J&F, along with MERS, committed slander of title

by clouding the title to the property and causing monetary loss to Plaintiff by the alleged malicious

recordation of an assignment which falsely declared the title of the property was vested in a person

or entity other than Plaintiff – the true owner.

A review of the fourteen paragraphs in support of Plaintiff's slander of title claim, however,

43

indicates first that any false statement was made by MERS and not Litton or J&F. For example, Plaintiff alleges that the post-foreclosure assignment was from "MERS to the Defendants."[31] Plaintiff alleges further that MERS and BNY "knowingly and unlawfully caused a cloud to be recorded against the title of the Plaintiff's property . . .," and "knew or should have known that [a transfer of any interest in Plaintiff's property was] wrongful and invalid and the publication of an ownership interest in the Plaintiff's property is [] false." Second Am. Compl. ¶¶ 244, 246. As noted earlier, however, Plaintiff lacks standing to challenge the validity of any assignment by MERS. *See Ward*, 2012 U.S. Dist. LEXIS 35380, *16-*17, 2012 WL 871119, at *5.

Second, Plaintiff does not allege facts giving rise to a plausible inference of malice on the part of Litton, MERS or J&F. Plaintiff's second amended complaint contains no allegations suggesting Plaintiff had not defaulted on his note. Rather, based on Plaintiff's misguided belief that the deed of trust "was flawed from the date of origination because MERS was named as beneficiary," Plaintiff contends Defendants had no right to foreclose on his property. As stated earlier, Plaintiff's deed of trust expressly provides that MERS was named as the beneficiary under Plaintiff's deed of trust and that the lender is entitled to foreclose on Plaintiff's property should Plaintiff default on the note. Ex. C [DE-4.4 at 1, 10]. That is, Plaintiff provides no allegations giving rise to the plausible inference that the foreclosure proceedings were not initiated on the premise that "the parties have color of title and have a bona fide belief therein," *Briggs*, 57 N.D. at 790, 224 N.W. at 205, and as such, do not suggest malice. Accordingly, the court recommends the motions to dismiss by Litton, MERS and J&F as to the slander of title claim be ALLOWED and that Plaintiff's slander of title claim against Litton, MERS and J&F be DISMISSED WITH PREJUDICE.

_____

[31]     It is unclear whether "Defendants" means all defendants or the Slander Defendants only.

**G.     Count XIII: Quiet Title claim against Litton, MERS and J&F**

Plaintiff contends he is entitled to have the property "quieted in Defendants' names until and unless some party comes forward in the litigation that has a right to enforce the loans upon his house free and clear of all encumbrances." Second Am. Compl. ¶ 252. Plaintiff does not differentiate among the defendants.

An action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." N.C. Gen. Stat. § 41-10. Accordingly, to state a claim for quiet title, "a plaintiff must meet two requirements: (1) plaintiff must own the land in controversy, or have some estate or interest in it; and (2) defendant must assert some claim in the land which is adverse to plaintiff's title, estate or interest." *Kelley*, 205 N.C. App. at 429, 696 S.E.2d at 779 (citation omitted). The purpose of the statute creating a cause of action to quiet title is to "free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion.*" Resort Development Co. v. Phillips*, 278 N.C. 69, 77, 178 S.E.2d 813, 818 (1971). A cloud upon title is in itself a title or encumbrance, apparently valid, but in fact invalid. *York v. Newman*, 2 N.C. App. 484, 488, 163 S.E.2d 282, 285 (1968) (citation omitted).

Here, Plaintiff fails to state a claim for quiet title as Plaintiff has not alleged that Litton, MERS or J&F has "assert[ed] some claim in the land." *Kelley*, 205 N.C. App. at 429, 696 S.E.2d at 779. The court observes further that Plaintiff's quiet title claim is based on the erroneous belief that MERS is a fraudulent entity possessing no rights under the deed of trust and accordingly lacked authority to assign the deed of trust to the lender's successors. *See, e.g.*, Second Am. Compl. ¶¶ 42,

45

48. Keeping this premise in mind, it appears Plaintiff is asking the court to declare that the Defendants cannot cause foreclosure proceedings to be initiated on behalf of the owner of the deed of trust. As discussed previously, the role of MERS is clearly identified in the deed of trust, which granted MERS the authority to assign the deed of trust on behalf of the lender and its assigns. Accordingly, the court recommends the motions to dismiss by Litton, MERS and J&F as to the quiet title claim be ALLOWED and that Plaintiff's quiet title claim against Litton, MERS and J&F be DISMISSED WITH PREJUDICE.

## VI.   CONCLUSION

For the reasons stated above, this court RECOMMENDS as follows:

(1)    Motion to Dismiss by Defendant Litton Loan Servicing, LP [DE-144] be ALLOWED;

(2)    Motion to Dismiss by Defendant MERSCORP, Inc. [DE-166] be ALLOWED;

(3)    Motion to Dismiss by The Bank of New York Mellon [DE-170] be ALLOWED and Plaintiff's Second Amended Complaint be DISMISSED WITHOUT PREJUDICE.

(4)    Motion to Dismiss by Defendants Johnson & Freedman, LLC and January N. Taylor [DE-175] be ALLOWED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

46

This, the 15th day of May, 2012.

Robert B. Jones, Jr.
United States Magistrate Judge

47