IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-218-FL

| | | |
|---|---|---|
| CHRISTOPHER JOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERSCORP, INC.; THE BANK OF | ) | |
| NEW YORK-MELLON; LITTON | ) | |
| LOAN SERVICING, LP; PROMMIS | ) | |
| SOLUTIONS, LLC, a Georgia | ) | |
| Corporation; JOHNSON & | ) | |
| FREEDMAN, LLC, a Georgia | ) | ORDER |
| Corporation; NATIONWIDE | ) | |
| TRUSTEE SERVICES, INC, a | ) | |
| Tennessee corporation; MONICA | ) | |
| WALKER, individually; CHRIS | ) | |
| MEYER, individually; MATRESSA | ) | |
| MORRIS, individually; JANUARY | ) | |
| N. TAYLOR, individually; DOES 1-10, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by

defendants MERSCORP, Inc. ("MERS"), Litton Loan Servicing, LP ("Litton"), Johnson &

Freedman, LLC, and January N. Taylor ("J&F defendants") (DE 144, 166, 175), and the motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(5) by the Bank of New York - Mellon ("BNY") (DE 170).

The magistrate judge issued memorandum and recommendation ("M&R"), upon referral by the

court, recommending that the court grant the motions to dismiss, to which plaintiff has objected and

the J&F defendants have responded. In addition, this matter is before the court on motion for

judgment on the pleadings, and to dismiss, pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(c), by

defendants Prommis Solutions, LLC, Nationwide Trustee Services, Inc., Monica Walker, Chris Meyer, and Matressa Morris ("Nationwide defendants"), and several additional motions related to that pleading (DE 205, 214, 218, 225). The many issues raised are ripe for ruling. For the reasons that follow, the court adopts in part and rejects in part the recommendation of the magistrate judge and grants the motions to dismiss by MERS, BNY, and the J&F defendants, and grants in part and denies in part the motion to dismiss by Litton. The court grants in part and denies in part the motion by the Nationwide defendants, with the remaining related motions determined as set forth herein.

## STATEMENT OF THE CASE

Plaintiff filed his initial complaint on May 28, 2010. The initial complaint named a number of defendants, including Countrywide Financial Corporation and Countrywide Home Loans ("Countrywide"), Decision One Mortgage Company, LLC ("Decision One"), Nationwide Trustee Services, Inc. ("Nationwide"), Monica Walker ("Walker"), Annie Lancaster ("Lancaster"), Dixie Maddrey Team, and Does 1-10, and asserted various claims arising out of the allegedly wrongful foreclosure of plaintiff's home.

Plaintiff's first amended complaint, filed July 30, 2010, added Litton Loan Servicing ("Litton") and Dixie Maddrey ("Maddrey") as defendants. The claims stated therein were as follows: (1) Unfair and deceptive trade practices and predatory lending; (2) abuse of process and fraud; (3) conversion; (4) negligent hiring and supervision and conspiracy; (5) negligent hiring and supervision and conspiracy; and (6) a federal violation of Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* Later, plaintiff voluntarily dismissed his claims against Decision One, Countrywide, Dixie Maddrey Team, Maddrey, and Lancaster pursuant to Rule 41(a)(1)(A)(I) of the Federal Rules of Civil Procedure, with claims remaining against Nationwide, Walker, and Does 1-10.

2

On December 3, 2010, plaintiff filed motion for leave to amend the complaint and to join a party defendant. Plaintiff's proposed second amended complaint sought to add eight new defendants and asserted a total of twenty-one (21) causes of action, spanning a total of forty-eight (48) pages. On February 23, 2011, the court therefore denied the amendment without prejudice and directed plaintiff to file a new motion to amend within fourteen (14) days, accompanied by revised proposed amendment, cured of noted deficiencies. On March 10, 2011, plaintiff filed motion to amend, with proposed second amended complaint, which Litton, Nationwide, and Walker opposed on the basis of futility. These defendants also moved to strike the second amended complaint.

On August 19, 2011, the court entered an order granting in part and denying in part the motion to amend, and denying the motions to strike. The court found the amendment not "clearly insufficient or frivolous on its face" as to several of plaintiff's claims, including claims for fraud, abuse of process, unfair and deceptive trade practices, negligent supervision, slander of title, quiet title, and claim under the Fair Debt Collection Practices Act ("FDCPA"). (Order at 8). The court found the amendment futile as to the remaining claims, including RICO, fraudulent conveyance, and reformation. Accordingly, the court directed the clerk to file plaintiff's second amended complaint, including exhibits, at docket entry number 114.

Plaintiff's second amended complaint now is the subject of defendant's motions addressed in this order. In particular, on September 11, 2011, Litton filed a motion to dismiss all claims against it for failure to state a claim. (DE 144). On December 28, 2011, MERS filed a motion to dismiss all claims against it for failure to state a claim. (DE 166). On January 11, 2012, BNY filed a motion to dismiss for lack of jurisdiction and for failure to serve. (DE 170). On January 19, 2012, the J&F defendants filed a motion to dismiss all claims against them for failure to state a claim. (DE 175).

3

On February 17, 2012, and March 16, 2012, these motions were all referred to magistrate judge for report and recommendation. On May 15, 2012, the magistrate judge entered M&R recommending that all motions be granted and that all of plaintiff's claims be dismissed.

On May 18, 2012, the Nationwide defendants filed a motion for judgment on the pleadings and to dismiss. On May 26, 2012, plaintiff filed a response, and a motion for extension of time *nunc pro tunc* to file his response one day late (DE 214). On July 12, 2012, the Nationwide defendants filed a motion to strike plaintiff's late response (DE 218). On September 18, 2012, plaintiff filed a request to supplement his response. (DE 225). On October 12, 2012, the Nationwide defendants filed a notice of suggestion of subsequently decided controlling authority. (DE 229).

## STATEMENT OF FACTS

The magistrate judge included in the M&R a detailed statement of the alleged facts, which is incorporated herein by reference. The court restates particular portions of that summary below, with amplification of certain facts as pertinent to the discussion that follows. On October 29, 2004, plaintiff executed a promissory note ("the note"), evidencing a loan in the amount of $264,000.00 for the benefit of Decision One, which was secured by a recorded deed of trust on 5721 Clarks Fork Drive, Raleigh, North Carolina ("the property"), listing MERS as nominee for the lender and the lender's successors and assigns. Compl. Ex. A; Ex. C. On December 3, 2007, Countrywide, as loan servicer, notified plaintiff that his loan was in serious default, advised of the amount owed, and informed plaintiff that if the default was not cured by January 2, 2008, foreclosure proceedings would be initiated. Second Am. Compl. Ex. F.

4

## A.    First Foreclosure

On September 8, 2008, BNY,[1] representing itself as the owner and holder of the note, executed an appointment of substitute trustee that removed the original trustee in the deed of trust and substituted as trustees defendants Nationwide, Morris, Walker, and non-party Amy L. Walke, granting them each authority to act as substitute trustees. Id. Ex. C. On September 9, 2008, Nationwide, notified plaintiff that a hearing with the Clerk of Superior Court for Wake County ("the Clerk") in connection with the foreclosure of the property was scheduled for October 16, 2008. Id. Ex. D. On October 16, 2008, plaintiff visited the Clerk's office for the foreclosure hearing; however, plaintiff was advised by Nationwide that the hearing would be continued to a later date. Id. ¶ 57. On November 18, 2008, Nationwide filed a motion with the Clerk, requesting continuance to January 8, 2009. Id. Ex. D-1.

On January 8, 2009, although no order had been entered granting the continuance, and although plaintiff had not been notified of a new hearing date, Nationwide participated in a foreclosure hearing with the Clerk. Id. ¶ 62. At the hearing, the Clerk entered an order, drafted by defendants, stating that "notice of this hearing has been served on the record owners," and "the debtors [sic] have shown no valid reason why foreclosure should not commence." Id. Ex. E.

On February 12, 2009, Nationwide filed a substitute trustees deed, stating that on January 29, 2009, Nationwide sold the property to BNY, and representing that it had provided "due and timely notice" to the debtor of the hearing on January 8, 2009, at which the Clerk authorized Nationwide

---

[1] According to the exhibits attached to the complaint, BNY, currently named The Bank of New York-Mellon, was formerly named The Bank of New York, and it is designated in the September 8, 2008, appointment as "The Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-BC1." Second Am. Compl. Exs. C & V. In this order, the court will refer to these name variations interchangeably as BNY.

5

to proceed with the sale. Id. Ex. H. Also on February 12, 2009, Nationwide submitted a letter, id. Ex. I, purporting to enclose a "Final Report and Accounting of Sale" to the Clerk, see id. Ex. J. On February 24, 2009, however, the Clerk refused this document because the "amended notice of hearing or continuance 1/8/09" was missing. Id. ¶ 67, Ex. J.

On March 9, 2009, J&F advised Plaintiff that it represented the purchaser ofthe property, BNY, at the foreclosure sale conducted January 29, 2009, and that BNY demanded possession ofthe property within ten days of plaintiff's receipt of said letter. Id. ¶ 68, Ex. K. On March 30, 2009, Nationwide filed with the Clerk the following documents: (l) an Affidavit of Missing Continuance, see id. Ex. N; (2) a revised accounting checklist, see id. Ex. O; and (3) a "Notice of Continuance" dated November 18, 2008, and stating that hearing referred to in notice previously served has been continued to January 8, 2009. Id. Ex. P. No signed order of continuance was included.

On May 1, 2009, the Wake County Sheriff notified Plaintiff that he had to vacate his home within two days. Id. ¶¶ 74-76, Ex. Q. Plaintiff quickly moved his belongings and the home was padlocked. Id. ¶¶ 76-77. Plaintiffs eviction came at a considerable expense, including the "loss of monies to move his personal belongings quickly and the total and complete loss of his home and his home-based business, a limousine service." Id. ¶ 77.

Plaintiff hired counsel, and on June 15, 2009, obtained a order by the Clerk vacating the Clerk's January 8, 2009, order allowing the foreclosure of sale to proceed, and vacating and striking from the records of the Wake County Registry the Substitute Trustee's deed recorded February 17, 2009, in favor of BNY. Id. ¶ 78, Ex. R. The Clerk ordered the substitute trustee to immediately return to plaintiff keys to the property and any items removed from the house as a result of the voided order. Id. Ex. R. The order further stated that if the substitute trustee or any other party

6

designated by the holder of the note and deed of trust wishes to proceed with the proposed foreclosure, it shall first give plaintiff proper notice. Id. In its order, the Clerk entered findings of fact, including the following:

- From October 16, 2008 until Chris Joy received a Notice to Remove all of his property from his residence at 5721 Clarks Fork Drive, Raleigh, NC, he received no notice of any kind from the Substitute Trustee or any other person, concerning a new hearing date, or any other matter.

- On March 31, 2009, a Notice of Continuance of Hearing was filed by the Substitute Trustee, indicating that the new date was January 8, 2009. There was in the file an Order of Continuance, which was not signed or dated, but which was filed on March 31, 2009, concerning the new hearing date.

- Chris Joy was never served in any manner with a copy of the Order of Sale, Notice of Sale, Report of Sale, or anything else, until after the holder of the note and deed of trust received a deed from the Substitute Trustee and he was not notified of any other proceedings in this matter until he received a Notice of Eviction from the Wake County Sheriff.

Id.

## B.   Second Foreclosure

On July 29, 2009, Litton sent plaintiff a "Notice Pursuant to NCGS 45-102," notifying him of a past due balance on the note. Id. Ex. S. On August 3, 2009, BNY, representing itself as the owner and holder of the note, removed the original trustee in the deed of trust and any subsequent substitute trustees, and substituted defendants Nationwide and Morris to act as substitute trustees. Id. Ex. V. On August 3, 2009, defendants designated in the complaint as BNY, Litton, Nationwide, Prommis, J&F, and Goldman Sachs[2] "caused a purported Appointment of Substitute Trustee" from BNY to Morris and Nationwide signed by Kimberly Dawson ("Dawson"), Vice President for BNY.

---

[2] Plaintiff does not name Goldman Sachs in the caption of the complaint. It does not appear from the record that Goldman Sachs has been served with the Amended Complaint.

Id. ¶ 84, Ex. V. According to Plaintiff, the appointment was "falsely signed" by Dawson "who has never been" a vice president of BNY, or "was signed by someone other than" Dawson. Id. ¶ 86. On August 5, 2009, BNY, Litton and Goldman Sachs "caused to be sent" to J&F a "false" Payoff Statement regarding plaintiff's loan. Id. ¶ 87, Ex. V-I. On August 12, 2009, Decision One filed an Assignment of Deed of Trust with the Wake County Registry signed by Michael Sisley ("Sisley"), Assistant Vice President, assigning all of its rights, title and interest in and to the deed of trust to BNY, stating the effective date of the assignment "was on or before June 16, 2008." Id. Ex. T. According to Plaintiff, at the time of the assignment, Decision One "was defunct, out of business, and no longer licensed to do business in the State of North Carolina" and Sisley was never an assistant vice president of Decision One. Id. ¶¶ 82-83.

On August 14, 2009, Denise Bailey, assistant secretary of Litton, executed a Lender's Affidavit, stating plaintiff had defaulted in the payment of the indebtedness owed BNY, BNY had demanded foreclosure of the deed of trust, and BNY had authorized Nationwide to act on its behalf in the foreclosure proceeding. Id. Ex. W. That same day, Walker, on behalf of Nationwide, filed an Amended Notice of Hearing with the Clerk, notifying Plaintiff that a hearing with respect to the deed of trust would be held on September 24, 2009. Id. Ex. X. On May 25, 2010, defendants designated in the complaint as BNY, Goldman Sachs, Litton, Nationwide, and J&F voluntarily dismissed the second foreclosure action. Id. ¶ 90.

## C.    Third Foreclosure

In 2010, Defendants designated in the complaint as BNY, Goldman Sachs, Litton, Prommis, Nationwide and J&F commenced a third foreclosure action against Plaintiff based upon purportedly

8

"fraudulent documents." Id. ¶ 92. According to the second amended complaint, the third foreclosure "has been continued with no date set for a hearing." Id. ¶ 96.

## DISCUSSION

### A. Standard of Review

The court may designate a magistrate judge "to submit . . . proposed findings of fact and recommendations for the disposition" of motions to dismiss for failure to state a claim. 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In evaluating whether a claim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the claimant, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further

9

factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id. In reviewing a 12(b)(6) motion, the court may consider written instruments attached as exhibits to the complaint. See Fed. R. Civ. P. 10(c). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), the exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

In evaluating a motion for judgment on the pleadings pursuant to Rule 12(c), the court applies the same standard as with a Rule 12(b)(6) motion. See Butler v. United States, 702 F.3d 749, 751-52 (4th Cir. 2012).

Rule 12(b)(5) permits dismissal for insufficient service of process. Under Rule 4(m), "if a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id.

**B.    Analysis**

### 1. Claims against BNY

The magistrate judge recommends granting BNY's motion to dismiss for failure to obtain proper service. See M&R at 15. The magistrate judge determined plaintiff has not demonstrated good cause for failure to obtain proper service, and that in light of its recommendation to dismiss claims against Litton, MERS, and the J&F defendants, the court should not exercise its discretion to grant an extension of time for service. Where plaintiff does not raise any objection with respect to BNY's motion to dismiss, and the court's review confirms the proposed result is correct, the court

10

adopts the determination of the magistrate judge that plaintiff has not demonstrated good cause for failure to obtain proper service. In light of the court's assessment of the claims against the remaining parties, set forth below, the court declines in its discretion to extend the time for service as to defendant BNY. Accordingly, the court will grant BNY's motion to dismiss without prejudice pursuant to Rule 12(b)(5).

## 2. FDCPA claim against Litton, Nationwide and Prommis

Plaintiff asserts a claim under the FDCPA against Goldman Sachs, Litton, Nationwide and Prommis. Second Am. Compl. ¶ 230-231. In articulating this claim, plaintiff asserts that "[t]hese defendants filed or caused to be filed, false, deceptive, misleading, and perjured affidavits in connection with the collections of debts in violation of 15 U.S.C. § 1692(e)." Id. ¶ 231. The magistrate judge concluded that plaintiff failed to state a claim against Litton, the only moving defendant at that time. The Nationwide defendants now argue in their motion for judgment on the pleadings that the claim should be dismissed against them, as well. Plaintiff objects to the magistrate judge's determination and opposes the motion by the Nationwide defendants. For the reasons stated below, the court rejects in part the magistrate judge's conclusion that plaintiff has failed to state a claim against defendant Litton, and will deny the motions by Litton, Nationwide, and Prommis as to this claim, to the extent stated herein.[3]

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The

_____

[3] For good cause shown, the court will allow plaintiff's motion for extension of time to file response to the motion for judgment on the pleadings (DE 214), and accordingly, the court will deny the Nationwide defendants' motion to strike the response (DE 218). The court will grant plaintiff's request to supplement his response, (DE 225), but to the extent the supplement includes argument, the court has disregarded the supplement. See Local Rule 7.1(g).

11

statute creates a private cause of action against debt collectors who violate its provisions. See 15 U.S.C. 1692k. "[T]he FDCPA imposes liability without proof of an intentional violation." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012) (quotations omitted). "To prevail on a FDCPA claim, a plaintiff must sufficiently allege that (1) he was the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA." Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Here, the magistrate judge determined that plaintiff satisfied the first two elements of the FDCPA claim as to defendant Litton. Upon de novo review, the court finds this determination correct, as to both Litton and the Nationwide defendants. Plaintiff was the object of collection activity arising from a consumer debt as defined by the FDCPA, and Litton and the Nationwide defendants qualify as debt collectors as defined by the FDCPA. See Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376 (4th Cir. 2006); 15 U.S.C. § 1692a(6). The remaining issue is whether, according to the allegations in the complaint, these defendants engaged in an act or omission prohibited by the FDCPA.

Plaintiff alleges in his FDCPA claim that these defendants "filed or caused to be filed false, deceptive, misleading, and perjured affidavits in connection with the collection of debts." Second Am. Compl. ¶ 231. As the magistrate judge determined, although plaintiff does not specify in this claim which affidavits are false, a review of the allegations in the complaint suggests the following filings, including two affidavits, were allegedly fictitious or false or contained such statements:

(1) a "fictitious" Appointment of Substitute Trustee dated September 2, 2008, Ex. C;

(2) a state court order dated January 8, 2009 falsely advising that Plaintiff had been notified of the foreclosure hearing, Ex. E;

(3) a "void" Substitute Trustee's Deed, Ex. H;

(4) an affidavit dated March 30, 2009 stating the required Notice of Continuance had been filed and served on Plaintiff in November 2008, Ex. N;

(5) a "false, phony and fictitious" Assignment of Deed of Trust dated August 12, 2009, Ex. T;

(6) a "false, fictitious and legally invalid" Appointment of Substitute Trustee dated August 3, 2009, Ex. V;

(7) a "false" Payoff Statement dated August 5, 2009, Ex. V-I;

(8) a "false and legally invalid" Lender's Affidavit dated August 14, 2009, Ex. W;

(9) a "fraudulently filed" Amended Notice of Hearing dated August 14, 2009, Ex. X;

See Second Am. Compl. ¶¶ 53, 60, 65, 71, 81, 84-85, 87, 88.

First, as to documents associated with the Nationwide defendants, plaintiff has sufficiently alleged a claim against these defendants, under the FDCPA, on the basis of several documents that assert that plaintiff was provided notice of the January 8, 2009, foreclosure hearing. In particular, the March 30, 2009, affidavit and accompanying documents submitted to the Clerk were allegedly false in two respects. First, the affidavit asserts that a continuance to January 8, 2009, was requested and "granted," see id. Ex. N, whereas according to the June 15, 2009, Clerk's order, no order of continuance was ever signed. See id. Ex. R. Second, the affidavit attaches a "Notice of Continuance of Hearing" which purports to show that notice was provided to plaintiff of the January 2009 hearing, see id. Ex. P, whereas according to the June 15, 2009, Clerk's order, plaintiff never received

13

any notice of the hearing. See id. Ex. R.[4] Thus, viewing the facts alleged in the manner most favorable to plaintiff, the allegations and exhibits permit the inference that the Nationwide defendants submitted these documents, after the January hearing had taken place, with the false or misleading assertion that proper notice had been given, when it had not in fact been given, in order that the foreclosure sale could proceed. Accordingly, on this basis, plaintiff has stated a claim against the Nationwide defendants under the FDCPA.

On one other limited basis, plaintiff has alleged facts supporting a FDCPA claim against Litton and the Nationwide defendants. In particular, plaintiff alleges that on August 3, 2009, Litton (along with other defendants including the Nationwide defendants) "caused a purported Appointment of Substitute Trustee" from BNY to Morris and Nationwide signed by Kimberly Dawson ("Dawson"), Vice President for BNY. Id. ¶ 84, Ex. V. According to Plaintiff, the appointment was "falsely signed" by Dawson "who has never been" a vice president of BNY, or "was signed by someone other than" Dawson. Id. ¶ 86. On August 12, 2009, Litton (along with other defendants including the Nationwide defendants) caused to be filed an Assignment of Deed of Trust with the Wake County Registry signed by Michael Sisley ("Sisley"), Assistant Vice President, assigning all of its rights, title and interest in and to the deed of trust to BNY, stating the effective date of the assignment "was on or before June 16, 2008." Id. ¶¶ 81-83, Ex. T. According to Plaintiff, at the time of the assignment, Decision One "was defunct, out of business, and no longer licensed to do business in the State of North Carolina" and Sisley was never an assistant vice president of Decision One. Id. ¶¶ 82-83.

---

[4] Similar assertions of notice having been given are included in the Substitute Trustee's Deed signed February 12, 2009, see Ex. H., the "Accounting Checklist for Foreclosure Sale," submitted by letter to the Clerk, Ex. I & J, and the Clerk's order dated January 8, 2009. Ex. E.

With respect to these two documents, plaintiff has alleged sufficient facts that, if accepted as true, may permit the inference that Litton or the Nationwide defendants caused to be filed "false, deceptive, or misleading representation or means" in connection with collection of plaintiff's debt. 15 U.S.C. § 1692e. If, as plaintiff alleges, Dawson was not Vice President for BNY, see Second Am. Compl. ¶ 86, Ex. V, then the signature on the August 3, 2009, appointment is misleading. Likewise, if, as plaintiff alleges, Decision One was out of business and Sisley was never an assistant vice president of Decision One, see id. ¶¶ 81-83, Ex. T, then the signature on the August 12, 2009, assignment also is misleading.

To be clear, the documents discussed above which form the basis for plaintiff's FDCPA claim are not false or misleading because of any asserted invalidity of assignments through MERS or the any asserted lack of authority of BNY to foreclose under assignments made through MERS. Rather, the extent of the claim against Litton and the Nationwide defendants is limited to alleged misrepresentations made about notice provided to plaintiff in the first foreclosure proceeding, and alleged misrepresentations made about the identity of the person executing the document in exhibits T and V, filed in connection with the second foreclosure proceeding.

By contrast, where plaintiff does not allege facts supporting assertions that the remaining documents attached to the complaint are "false" or specifying the manner in which they are false, these assertions do not support a claim under the FDCPA. At this point, the court's analysis converges with that of the magistrate judge. For example, plaintiff alleges the following additional documents were "false" or "fictitious":

- a "fictitious" Appointment of Substitute Trustee dated September 2, 2008, Ex. C;

- a "false" Payoff Statement dated August 5, 2009, Ex. V-I;

15

- a "false and legally invalid" Lender's Affidavit dated August 14, 2009, Ex. W;

- a "fraudulently filed" Amended Notice of Hearing dated August 14, 2009, Ex. X;

Plaintiff does not provide any factual allegations supporting the conclusory assertion that these documents are "false" "fictitious" or "fraudulently filed." Second Am. Compl. ¶¶ 53, 87-89. Rather, as the magistrate judge determined correctly with respect to exhibits V-1 and W, and as is equally the case with respect to exhibits C and X, it appears that plaintiff's allegations with respect to these documents are premised on the belief that MERS lacked authority to assign the deed of trust and that BNY lacked standing and the capacity to foreclose. See Second Am. Compl. ¶¶ 41-50, 54; Obj. at 5. As an initial matter, plaintiff's legal assertions are contradicted by the plain terms of the note and the deed of trust.[5] Further, where plaintiff's assertions are based on a lack of documentation to substantiate an assignment or transfer of the note or deed of trust, they do not provide a factual basis for plaintiff's FDCPA claims. See Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 781 (E.D.N.C. 2011) (stating FDCPA claim insufficient if based upon defendants' conduct in "filing a lawsuit to collect a purported debt without the means of proving the existence of the debt, the amount of the debt, or that defendant owned the debt"). In further support of this determination, the court incorporates herein the discussion of the magistrate judge regarding MERS at pages 22-25 of the M&R.

---

[5] For example, the note provides that plaintiff promises to pay the principal amount, plus interest "to the order of the Lender," and that "[t]he Lender is Decision One Mortgage Company, LLC." Compl. Ex. A. The note further provides that plaintiff "understand[s] that the Lender may transfer this Note," and "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Id. In turn, under the Deed of Trust, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," and "MERS is the beneficiary under this Security Instrument." Compl. Ex. C. Under the Deed of Trust "MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise" any or all of the interests granted by plaintiff in the Deed of Trust. Id. at 3. In addition, plaintiff "irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale," the property. Id. at 2.

16

Further, the court rejects plaintiff's argument that the Nationwide defendants violated the FDCPA generally through the "practice of rubber stamping names of the substitute trustee on documents that required signatures and personal knowledge," Resp. to Mot. J. Pleadings at 13, as further described in Exhibit Y to the complaint. See Second Am. Compl. Ex. Y, ¶¶ 8-11. The fact that defendants employed a process of placing "rubber stamp[ed]" signatures on substitute trustee documents, without more specific allegations regarding lack of authorization for the signatures made, is not sufficient to establish a claim under the FDCPA. See Warren, 676 F.3d at 375 (violations grounded in "false representations" under the FDCPA "must rest on material representations"); Stewart v. Bierman, 859 F. Supp. 2d 754, 762 & 764 (D. Md. 2012) (dismissing FDCPA claim premised on allegation that defendants falsely executed signatures of a trustee through use of "robo-signings," and accepting defendants' argument that "the method of applying signatures to otherwise substantially correct legal foreclosure documentation is immaterial to the debtor"); In re Bass, __ S.E.2d __, 2013 WL 865408 *5 (N.C. March 8, 2013) (holding that a foreclosing bank may rely upon stamped signatures on loan indorsements in foreclosure action, unless specific allegations or evidence "would support a finding that the signature is forged or unauthorized").[6]

In sum, plaintiff has stated a claim under FDCPA against Litton and the Nationwide defendants based upon alleged misrepresentations are made about notice provided to plaintiff (corresponding to exhibits E, H, I, J, N & P), and alleged misrepresentations made about the identity

---

[6] The court also rejects plaintiff's suggestion that his FDCPA claim should be broadened to cover the J&F defendants. Obj. at 2-3. In the Second Amended Complaint, plaintiff limits his FDCPA claim to defendants Goldman Sachs, Litton, Nationwide and Prommis. Second Am. Compl. ¶¶ 230-231. Defendants are entitled to "fair notice" of the claims against them. Twombly, 550 U.S. at 555. Where the J&F defendants are not named in this claim, and where plaintiff in other claims specifically names J&F, plaintiff's attempt to add them to this claim through his response to motions to dismiss and in objections to the magistrate judge recommendation is unavailing. See Bryant v. Wells Fargo Bank, Nat. Ass'n, 861 F. Supp. 2d 646, 653 (E.D.N.C. 2012).

of the person executing two documents filed in connection with the second foreclosure (corresponding to exhibits V & T). Accordingly, the court rejects in part the recommendation of the magistrate judge with respect to the FDCPA claim against Litton, to the extent set forth herein, and the court will deny the Nationwide defendants' motion to dismiss the FDCPA claim, to the extent set forth herein.

### 3. Fraud claims against all defendants

Plaintiff asserts claims for fraud against all defendants based on a number of different grounds similar to those considered in support of the FDCPA claim. These grounds are (1) defendants' failure to provide notice of the first foreclosure hearing and defendants' allegedly false assertions regarding such notice, see Second Am. Compl. ¶¶ 62, 69-75; Obj. to M&R 10; Opp'n to Mot. J. Pleadings 9; (2) statements made in documents in support of the second foreclosure proceeding that allegedly misrepresented the person or entity signing the documents, see Second Am. Compl. ¶¶ 82 & 86; Exs. T, V; (3) defendants' reliance on assignments and other loan documents that allegedly were invalid, unauthorized or otherwise defective, see Second Am. Compl. ¶¶ 80-81, 83-85, 87-89, 211-224, Obj. to M&R 9; and (4) defendants' practice of "rubber-stamping" assignments and other loan documents. See Second Am. Compl. ¶ 89, Opp'n to Mot. J. Pleadings 7, 10).

To make out a case of actionable fraud under North Carolina law, plaintiff must show the following elements:

"(a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that defendant knew the representation was false when it was made or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that defendant made the false representation with the intention that it should be relied upon by plaintiffs; (e) that plaintiffs reasonably

18

relied upon the representation and acted upon it; and (f) that plaintiffs suffered injury."

Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 253 (1980) (citing Ragsdale v. Kennedy, 286 N.C. 130 (1974); Odom v. Little Rock & I-85 Corp., 299 N.C. 86 (1980)). In alleging a fraud claim, a party "must state with particularity the circumstances constituting fraud," including the element of reasonable reliance. Fed R. Civ. P. 9(b); Learning Works, Inc. v. The Learning Annex, Inc., 830 F.2d 541, 546 (4th Cir. 1987).

With respect to grounds (3) and (4), the court incorporates and adopts the discussion of the magistrate judge, see M&R 39-40, as well as the court's above analysis addressing these grounds in support of the FDCPA claim.[7] The same analysis also provides reasons for dismissal of fraud claims asserted on the basis of grounds (3) and (4). To reiterate, allegations that loan documents and assignments were invalid, unauthorized, or otherwise defective, either because of deficiencies in the MERS system or because of the use of "rubber stamping," are not sufficient to establish the false statement element of a fraud claim. In addition, plaintiff has not alleged facts that he relied upon these allegedly invalid, unauthorized, or otherwise defective practices to his detriment.

With respect to grounds (1) and (2), by contrast, plaintiff has sufficiently alleged facts that some of the defendants made false statements with regard to plaintiff's notice for the first foreclosure, and with regard to the identity of the entity or individual signing certain documents. Nevertheless, as with grounds (3) and (4), plaintiff has not alleged facts supporting the element of

---

[7] Plaintiff objects to the M&R on the basis that this court, in allowing plaintiff's motion to amend complaint, stated that "[s]everal of plaintiff's claims are clearly not futile," including the claims for fraud. Obj. 11. As noted above, however, the court applied a different standard upon motion to amend in this case than is required in analyzing a motion to dismiss. See Order (April 19, 2011) 7 (applying standard that to deny motion to amend on grounds of futility, claim must be "clearly insufficient or frivolous on its face"). Accordingly, the court's prior determination on motion to amend has no bearing on the court's present determination on motion to dismiss, and the court overrules this objection as to all claims for which it is raised. See Obj. 6, 11, 13, 16, and 17.

19

reliance. "In North Carolina, a fraud claim is fatally defective unless it alleges detrimental reliance, and damages proximately flowing from such reliance, with particularity." Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005) (citing Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990)). Here, where plaintiff allegedly did not receive notice of the hearing in the first foreclosure, the allegations in the complaint do not support an inference that he relied on defendants' statements with respect to notice. Likewise, plaintiff has not alleged any manner in which he relied upon, or was harmed as a consequence of, the statements made with regard to the identity of the entity or individual signing the aforementioned assignment of deed of trust and appointment of substitute trustee, related to the second foreclosure.

Accordingly, plaintiff's fraud claims against defendants (comprising counts I-II, VI-VIII) must be dismissed for failure to state a claim.

### 3. Abuse of Process Claim

In addition to alleging fraud, plaintiff asserts a claim in Count I on the basis of "abuse of process [by] all defendants." Second Am. Compl. at 9. The magistrate judge recommended dismissal of this claim as to moving defendants Litton and J&F. For the reasons stated below, plaintiff has failed to state a claim for abuse of process against any of the defendants.

"[A]buse of process is the misuse of legal process for an ulterior purpose." Stanback v. Stanback, 297 N.C. 181, 200 (1979). "[A]buse of process requires both an ulterior motive and [a]n act in the use of the legal process not proper in the regular prosecution of the proceeding, and that both requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect." Id. at 201 (quotations omitted). "The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by defendant or

20

used by him to achieve a collateral purpose not within the normal scope of the process used." Id. "The act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." Id.

In this case, plaintiff's abuse of process claim fails because he has not alleged facts establishing the "ulterior motive" element of the claim. In particular, while plaintiff contends that the foreclosure actions in this case involved abuse of process, the claim fails because the legal proceedings commenced by defendants were commenced for the purpose of foreclosing upon plaintiff's property, where plaintiff is in default. Indeed, the allegations of the complaint and the attachments thereto make clear that defendants intended to foreclose upon plaintiff's property through legal action. See Second Am. Compl. ¶ 52 (defendants filed "numerous foreclosure actions against Plaintiff beginning in or about September 2008"). Plaintiff does not allege any "collateral purpose" for the legal actions initiated other than foreclosure. Thus, plaintiff has not alleged that the "action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used." Stanback, 297 N.C. at 201. Accordingly, plaintiff's abuse of process claim fails as a matter of law and will be dismissed.

### 4. Unfair and Deceptive Trade Practices Claim

In Count III, plaintiff alleges that defendants instituted the third foreclosure in 2010 on the basis of "fraudulent documents in the Wake County Court" which "intentionally had the capacity and tendency to deceive" plaintiff and that such acts "violated standards of fair trade practices." Second Am. Compl. ¶¶ 91-96. The magistrate judge determined that plaintiff's unfair and deceptive trade practices claim is "premised on the erroneous belief that all foreclosure filings were fraudulent

21

because MERS had no rights under the deed of trust." M&R at 41. As such, plaintiffs unfair and deceptive trade practices claim was nothing more than a "formulaic recitation of the elements of a cause of action," and thus failed to state a claim upon which relief could be granted. Id. The court agrees. The court adopts the determination of the magistrate judge as to defendants Litton and the J&F defendants, and incorporates the same analysis with respect to the Nationwide defendants.

To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), a claimant must allege (1) an unfair or deceptive act or practice, (2) in or affecting commerce, (3) that proximately caused actual injury to plaintiff. See Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair if it is unethical and unscrupulous, and it is deceptive if it has a tendency to deceive." Id. A party must allege "substantial aggravating circumstances" to support a claim under the UDTPA. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998); Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012) ("Egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect.") (citation omitted). "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." Bhatti v. Buckland, 328 N.C. 240, 243 (1991) (quotations omitted).

In this case, the same analysis that supported dismissal of plaintiff's fraud claim also supports dismissal of his UDTPA claim. Plaintiff bases his UDTPA claim on allegations that loan documents and assignments in support of the third foreclosure were invalid, unauthorized or otherwise defective, whether because of deficiencies in the MERS system or the use of "rubber stamping." See Second Am. Compl. ¶¶ 91-96; Opp'n to Mot. J. Pleadings 17. His objections to the M&R rely upon the same allegations. See Obj. 12. Just as these allegations are not sufficient to establish the

22

elements of a fraud claim, they are not sufficient to establish the "[e]gregious or aggravation circumstances" that must be alleged before a unfair deceptive trade practices claim may be allowed to proceed. Ellis, 699 F.3d at 787. Accordingly, plaintiff's UDTPA claim will be dismissed for failure to state a claim.

### 5. Negligent Supervision Claim

Plaintiff asserts a negligent supervision claim against BNY, the J&F defendants, and the Nationwide defendants, on the basis that they had a duty of care to supervise the actions of their employees and agents, whose actions were "unlawful and violated Plaintiff's property rights," and that defendants knew or should have known their employees acted unlawfully. Second Am. Compl. ¶¶ 98-104. The magistrate judge recommended dismissal of the claim against J&F, the only moving defendant at the time. M&R at 41-42. The court adopts the recommendation of the magistrate judge as to defendant J&F, and the court finds that the same analysis requires dismissal of the claim against the Nationwide defendants.

To state a claim for negligent supervision, a plaintiff must allege "(1) that an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. First Union Nat. Bank, 202 F.3d 234, 250 (4th Cir. 2000) (citing Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 124 (1986)).

Plaintiff's negligent supervision claim fails because he alleges no facts that defendants knew or had reason to know of any employee incompetency prior to the alleged improper conduct. For example, plaintiff states that Walker, alleged to be an "employee or agent" of Nationwide, Prommis, and J&F, was demoted following alleged errors regarding plaintiff's foreclosure file, particularly

23

regarding the allegedly improper sale without notice of plaintiff's home on January 29, 2009. Second Am. Compl. Ex. Y, ¶¶ 21-23. But, plaintiff does not allege that defendants had any knowledge of alleged errors committed by Walker "prior to the act" that was allegedly in error. See Smith, 202 F.3d at 250. Indeed, plaintiff alleges that "after the problem" with the sale, Walker was demoted, Second Am. Compl. Ex. Y ¶¶ 22, thus belying plaintiff's assertion that defendants negligently supervised Walker.[8] Accordingly, plaintiff's negligent supervision claim will be dismissed for failure to state a claim.

### 6. Slander of Title

Plaintiff asserts a slander of title claim against defendants on the basis that they "knowingly and maliciously communicated, in writing, a false statement that has the effect of disparaging the plaintiff's title to property," and that "plaintiff has incurred special damage as a result." Second Am. Compl. ¶ 238. Plaintiff raises several categories of allegations in support of this claim, some of which appear to include statements and suggestions about the invalidity of assignments from MERS to defendants, see id. ¶¶ 239-250, and others which fairly cover conduct by the Nationwide defendants in proceeding with the first foreclosure sale despite having provided no notice to plaintiff. see id. ¶ 245; see Opp'n to Mot. for J. on Pleadings 27. For the reasons stated below, the court finds that allegations suggesting invalidity of assignments from MERS do not support a slander of title

---

[8] Plaintiff's reliance upon In re Adams, 204 N.C. App 318 (2010) is misplaced. In Adams the court of appeals reversed a trial court's order in a foreclosure proceeding "authorizing Monica Walker, Matressa Morris, and Nationwide to act as substitute trustees and proceed with foreclosure under a power of sale for [a] property described in [a] Deed of Trust recorded . . . in the Wake County Register of Deeds," due to a lack of an assignment of deed of trust "showing that the original holder of the note and deed of trust had assigned its interest in said instruments to the party seeking to foreclose." 204 N.C. App. at 325. While Adams illustrates the challenges defendants may face in attempting to foreclose where there is an alleged lack of documentation, this does not support plaintiff's assertion here that an incompetent employee of defendants committed a tortious act and that, prior to the act, defendants had reason to know of the employee's incompetency.

claim, and the court adopts the magistrate judge's recommendation to dismiss the claim against Litton, MERS, and J&F, on that basis. M&R at 42-44. By contrast, for the reasons set forth below, plaintiff's allegations with respect to conduct by the Nationwide defendants in proceeding with the first foreclosure sale of plaintiff's property despite allegedly having provided no notice to plaintiff do support a slander of title claim against the Nationwide defendants. Accordingly, the motion for judgment on the pleadings by the Nationwide defendants as to this claim will be denied.

"Slander of title occurs when an individual maliciously makes false statements about the title of another's property, thus causing special damages." Town of Nags Head v. Toloczko, 863 F. Supp. 2d 516, 535 (E.D.N.C. 2012) (citing Mecimore v. Cothren, 109 N.C.App. 650, 654 (1993)). Malice is established by showing that the statement regarding title was not made in "good faith," or that it was made without "probable cause for the defendant's belief," or that defendant "could not honestly have entertained such belief." Cardon v. McConnell, 120 N.C. 461, 461 (1897).

Considering first alleged conduct by the Nationwide defendants in connection with the first foreclosure sale, plaintiff has sufficiently alleged slander of title on the basis of the substitute trustee's deed, presented and recorded with the Wake County Register of Deeds, on February 17, 2009. This deed transfers title in plaintiff's property by stating that after notice was provided to plaintiff of the foreclosure sale, Nationwide as grantor proceeded to sell plaintiff's property at foreclosure and thereby conveyed the property to BNY "to have and to hold the said land, together with all privileges and appurtenances as thereunto belonging unto the said Grantee. . . ." Second Am. Compl. Ex. H. As noted above, subsequent to this transfer of title, the Wake County Superior Court determined that plaintiff in fact had received no notice of the foreclosure sale, and that as a

25

result the February 17, 2009, trustee's deed was "vacated, and declared null and void and of no further effect, and [was] stricken from the records of the Register of Deeds." Id. Ex. R.

As such, during the time the substitute trustee's deed was in effect and filed with the registered of deeds (from February 17, 2009, to June 15, 2009) it falsely stated that notice of foreclosure had been provided to plaintiff and that title properly had been conveyed to BNY, when allegedly it had not. In this manner, a "false statement[] about the title of [plaintiff's] property" had been made. Town of Nags Head, 863 F. Supp. 2d at 535 (E.D.N.C. 2012). Further, the allegations in the complaint and exhibits thereto support the inference that the Nationwide defendants knew that plaintiff had not received notice of the foreclosure sale, and knew therefore that it had not been properly sold at foreclosure sale, but proceeded to file the substitute trustee's deed. See Second Am. Compl. ¶¶ 60, 62-78, Ex. R. On this basis, malice can be inferred, because the statement allegedly was made without "probable cause for the defendant's belief" in the truth of the statement. Cardon, 27 S.E. at 109. Finally, the substitute trustee's deed directly impacted plaintiff's title in the property, and caused him "special damages" in eviction. Town of Nags Head, 863 F. Supp. 2d at 535. Thus, on the basis of the substitute trustee's deed filed February 17, 2009, plaintiff has stated a slander of title claim against the Nationwide defendants.

Plaintiff has not, however, stated a claim for slander of title on any other asserted basis, including on the basis of allegedly invalid "assignments" from MERS to defendants. Second Am. Compl. ¶¶ 239-240. For example, one assignment referenced in the complaint is an assignment of deed of trust dated August 12, 2009, attached as Exhibit T to the second amended complaint. Although plaintiff has alleged sufficient facts to support an inference that this document contains a "false statement" with respect to the identity of the person signing the document, plaintiff has failed

26

to allege that this statement, or any of the statements in the MERS assignments, were made about plaintiff's title to the property, or that plaintiff suffered "special damages" as a result of any statement made about his title to the property. Town of Nags Head, 863 F. Supp. 2d at 535. The alleged false statements did not alter the fact that plaintiff had defaulted on his loan, and that the default triggered a right of MERS, as nominee for Lender and Lender's successors and assigns "to exercise any or all of the" interests granted by plaintiff in the deed of trust. Compl. Ex. C at 3. In contrast to the substitute trustee's deed, which conveyed all title in plaintiff's property to BNY, the allegedly false assignment did not in that manner impact plaintiff's rights in and title under the property. Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 567-68 (E.D.N.C. 2012) (noting that the validity of any assignment by MERS does not impact whether a borrower owes its obligations, but only impacts to whom borrower is obligated).

Moreover, the court rejects plaintiff's suggestion in the amended complaint that on the basis of his slander of title claim he should be entitled to a "declaratory judgment against Defendants MERS and BNY stating that Defendants have violated Plaintiff's rights and that the Defendants had and have no right to hold mortgages in the name of MERS or BNY and/or foreclose on Plaintiff's property and that the Defendants are entitled to no further payments from the Plaintiff or recognition in Plaintiff's Title to his property." Second Am. Compl. ¶ 249. Contrary to plaintiff's suggestion, nothing in plaintiff's slander of title claim entitles him to "a reformation of these notes as unsecured notes or as partially or wholly discharged notes." Id. ¶ 250. None of these remedies are warranted, because the valid basis for plaintiff's slander of title claim is much more limited. Put simply, the Nationwide defendants proceeded with a foreclosure sale of plaintiff's property allegedly without providing notice to plaintiff, and allegedly with knowledge that no such notice was provided. That

27

sale which forms the basis of the slander of title claim was nullified by the Wake County Superior Court, but not until after plaintiff incurred damages as a result of eviction. Thus, there is no basis for the declaratory relief and the "reformation" sought by plaintiff in this claim.

In sum, plaintiff has stated a claim for slander of title on the basis of the February 17, 2009, substitute trustees deed, which was subsequently vacated and declared null and void by the Wake County Superior Court. Accordingly, to the extent stated herein, the court will deny the motion for judgment of pleadings by the Nationwide defendants on the slander of title claim. By contrast, other grounds asserted for this claim are insufficient as a matter of law, and the court adopts the recommendation of the magistrate judge, and will dismiss the claims against Litton, MERS, and J&F.

### 7. Quiet Title Claim

Plaintiff asserts in his quiet title claim that he "is entitled to have his property as referred to herein quieted in Defendants' names until and unless some party comes forward in the litigation that has a right to enforce the loans upon his house free and clear of all encumbrances." Second Am. Compl. ¶ 252. The magistrate judge recommended dismissal of this claim against moving defendants Litton, MERS and J&F. The court adopts and incorporates the determination of the magistrate judge as to this claim, and the same analysis is applicable as to the Nationwide defendants.

"An action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." N.C. Gen.Stat. § 41–10. The purpose of the statute creating a cause of action to quiet title is to "free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the

28

channels of commerce and trade unfettered and without the handicap of suspicion." <u>Resort Development Co., Inc. v. Phillips</u>, 278 N.C. 69, 76 (1971) (quoting <u>Christman v. Hilliard</u>, 167 N.C. 4, 8 (1914)).

In this case, plaintiff entered into a mortgage loan, thereby encumbering his property by the deed of trust. Am. Compl. ¶ 41; Compl. Exs. A & B. Because plaintiff has not alleged any facts providing a basis for removing the deed of trust as an encumbrance on his property, where it is undisputed also that he defaulted on his mortgage loan, and because defendants are not presently asserting any other encumbrance adverse to plaintiff, there is no basis for a quiet title claim. <u>See</u> <u>Konar v. New Century Mortg. Corp.</u>, 7:11-CV-163-F, 2013 WL 427103 *5 (E.D.N.C. Feb. 4, 2013) ("[A]t bottom, Plaintiff appears to seek a declaration from the court that a servicer . . . may not enforce the encumbrance for any variety of reasons not concerning the validity of the encumbrance. This is not the purpose of a quiet title action."); <u>Lancaster v. Suntrust Mortg., Inc.</u>, 7:09-CV-134-BO, 2011 WL 3104951, at *2 (E.D.N.C. July 23, 2011) (dismissing plaintiffs' quiet title claim because plaintiffs were not seeking to remove an invalid encumbrance from the property, but instead were asking the court "to declare that service cannot cause foreclosure proceedings to be initiated on behalf of the owner of a security interest in a piece of property"). Accordingly, plaintiff's quiet title claim will be dismissed.

## CONCLUSION

Based on the foregoing, the court ADOPTS IN PART and REJECTS IN PART the recommendation of the magistrate judge, as set forth herein. The court GRANTS the motion to dismiss by BNY (DE 170). The court GRANTS the motions to dismiss by MERS and the J&F defendants (DE 166, 175). The court GRANTS IN PART and DENIES IN PART the motion to

29

dismiss by Litton (DE 144). The court GRANTS IN PART and DENIES IN PART the motion for judgment on the pleadings and motion to dismiss by the Nationwide defendants (DE 205). The court GRANTS plaintiff's motion for extension of time (DE 214), and DENIES Nationwide defendants' motion to strike the response (DE 218). The court GRANTS plaintiff's request to supplement his response, (DE 225), as limited herein.

The court DISMISSES WITH PREJUDICE all of plaintiff's claims except for his claim against Litton and the Nationwide defendants under the FDCPA (Count X), and plaintiff's claim against the Nationwide defendants for slander of title (Count XII), limited to the extent set forth herein.

Where by order dated March 2, 2011, (DE 108) the court previously stayed its December 1, 2010, case management order (DE 81) pending ruling on the motions to dismiss, the stay is now lifted and the remaining parties shall confer pursuant to Rule 26(f), on or before twenty-one (21) days from the entry of this order, to develop a new report and proposed plan for discovery and remaining deadlines in this case. In all other regards, the August 6, 2010, Initial Order Regarding Planning and Scheduling (DE 41) remains in effect and, the parties shall refer to it for further planning and scheduling deadlines and information.

SO ORDERED, this the ⟨27⟩ day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge

30